William J. MAYERS, D.C. and Patricia M. Mayers, Petitioners,

v.

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

No. 85-3803.

United States Court of Appeals, Eleventh Circuit.

Dec. 22, 1986.

---

Laurence B. Liebowitz, Liebowitz & Royster, P.C., Elmsford, N.Y., for petitioners.

John C. Hoyle, U.S. Dept. of Justice, Civil Div., Appellate Staff, Washington, D.C., for respondent.

Before HILL and FAY, Circuit Judges, and MORGAN, Senior Circuit Judge.

HILL, Circuit Judge:

In this appeal from an administrative determination of the Secretary of Health and Human Services the constitutionality of the Civil Monetary Penalties and Assessment Act (CMPAA), 42 U.S.C. § 1320a–7a (1982 & Supp. III 1985) is challenged. We hold this statute to be constitutional on its face and as applied to the petitioner. Petitioner raises several additional challenges to the assessment of a civil penalty by the Administrative Law Judge. These attacks on the Administrative Law Judge's decision are also rejected.

This action was commenced by the United States Department of Health and Human Services to recover civil penalties for 307 false medicare claims for reimbursement filed by William Mayers, a chiropractor, operating three chiropractic centers in the Fort Meyers, Florida area. Mayers was assisted in this scheme by his wife, Patricia, who handled the bookkeeping for the clinics. The 307 claims contested by the Department covered 2,702 false items

and services for which the Mayers sought reimbursement in the amount of $145,550.

The Administrative Law Judge who heard this matter found that the Mayers knew or should have known that the 2,702 items and services were not provided as claimed. The Administrative Law Judge proceeded to impose an assessment and civil penalty of $1,791,100 and ordered the Mayers suspended from the Medicare and Medicaid programs for 25 years. The decision was affirmed by the Secretary of the Department of Health and Human Services.

The CMPAA was added to the Social Security Act to discourage fraud in the Medicare program. Specifically, the Act authorizes the Secretary of the Department of Health and Human Services to impose a $2,000 fine for each item submitted for reimbursement when the person submitting the claim knew or should have known the item was not provided as claimed. 42 U.S.C. § 1320a–7a (1982 & Supp. III 1985). In addition to the fine, the Act permits "an assessment of not more than twice the amount claimed for each such item or service in lieu of damages sustained by the United States or a State agency because of such claim." *Id.* Finally, the Act authorizes the Secretary to bar an individual from participating in the Medicare program from filing a false claim. *Id.* § 1320a–7a(b).

The establishment and administration of Medicare is set forth in subchapter XVIII of the Social Security Act. Essentially, the medicare program consists of three parts: (1) Part A concerns insurance for hospital and related post-hospital services for eligible beneficiaries (42 U.S.C. §§ 1395c to 1395i–2); (2) Part B concerns supplemental insurance covering various health services for eligible beneficiaries not included within Part A (42 U.S.C. §§ 1395k–1395w); (3) Part C sets forth miscellaneous provisions not covered in Parts A and B (42 U.S.C. §§ 1395x–1395xx). All claims submitted by the Mayers are governed by Part B of the Medicare Program.

Part B specifically covers "medical and other health services" rendered to eligible beneficiaries. 42 U.S.C. § 1395k(a)(1) (1982). "Medical and other health services" are defined so as to include physicians' services, services and supplies "furnished as an incident to a physician's professional service," and diagnostic tests. *Id.* § 1395x(s). The Act further defines physician's services as "professional services performed by physicians." *Id.* § 1395x(g). Chiropractors are included in the definition of physician "only with respect to treatment by means of manual manipulation of the spine (to correct a subluxation demonstrated by X-ray to exist)." *Id.* § 1395x(r). None of the claims filed by the Mayers were for services included within this very narrow category.

The evidence presented to the Administrative Law Judge supports the conclusion that: (1) the Mayers operated a clinic designed solely to provide chiropractic services; (2) the services rendered at the clinic were clearly not reimbursable under Medicare, and (3) the Mayers engaged in a fraudulent scheme to disguise these non-reimbursable chiropractic services as services rendered by a physician. As part of this fraudulent scheme, the Mayers placed various physicians on the clinic's payroll and claimed these physicians were in charge of the treatment of patients. This was done so that the chiropractic services rendered by the clinic would have the appearance of being rendered incident to a physician's service. In fact, such was not the case.

The physicians hired by the clinic were retained for the sole purpose of lending their names and licenses to the clinic's claims for Medicare reimbursement. The doctors hired by the clinic knew little about chiropractic treatment prior to their employment. Once hired, these doctors had little contact with the patients of the clinic. All patients treated by the clinic received essentially the same tests and therapies. Due to the standardized nature of the chiropractic services, the physicians played no role in the administration of this treatment.

William Mayer's conduct underscores the fact that these doctors were hired for the sole purpose of obtaining the Medicare billing numbers of the physicians. Prior to hiring these doctors, Mayer told his wife: "The best thing to do would be to get a foreign doctor, someone that doesn't understand the language too well or speak it too well to sign [Medicare claims]." The Mayers proceeded to hire three doctors of foreign extraction. These doctors were required to permit a rubber stamp to be made of their signature to facilitate Medicare billing. Although such a rubber stamp is not improper when used in the preparation of a valid claim, here the Mayers acquired these rubber stamps to perpetuate their fraudulent scheme. Although a Medicare carrier informed the Mayers that the use of such rubber stamps would not be permitted, the Mayers continued this practice. Despite efforts by the physicians to gain custody of the stamps upon departing from the Mayers' employment, the Mayers routinely retained at least one stamp of each doctor's signature. These rubber stamps were used by the clinic in preparing Medicare claims for services rendered after the doctors had left the clinic. Of the 2,702 items contested by the Secretary in this action, the physicians hired by the Mayers were either not present at the office or not currently in the Mayer's employment at the time the services were rendered.

## I. CONSTITUTIONALITY OF THE CMPAA

If the CMPAA is deemed to be a criminal statute, the proceedings against the Mayers would have been constitutionally inadequate. We therefore must consider whether the penalty imposed was civil or criminal in nature.

■ In determining whether a particular statute is civil or criminal in nature, a two prong inquiry is utilized. *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). The first inquiry is whether Congress has expressly or impliedly designated the statute as civil or criminal. The Mayers argue that the legislative intent in enacting the CMPAA was to provide the government with an alternative means of prosecuting Medicare/Medicaid fraud cases. Citation is made to numerous legislative reports in support of this argument. *E.g.,* H.R.Rep. No. 158, 97th Cong., 1st Sess., vol. III, at 329 (1981) ("The civil monetary penalty provided for in this bill is intended to provide an alternative to criminal proceedings so as to increase the effectiveness of enforcement in the medicare and medicaid programs."). The clear congressional intention, however, is that the alternative to prosecution is to be a *civil* proceeding. As in *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), the labeling of the sanction as a "civil penalty" is determinative of Congressional intent. This is particularly true in light of the name given by Congress to the act—the *Civil* Monetary Penalties & Assessment Act.

■ The second prong of the inquiry is whether the statute is "so punitive either in purpose or effect as to negate [the intention of Congress]." *Ward,* 448 U.S. at 249, 100 S.Ct. at 2641. Rarely will a court find a statute to be criminal in nature when Congress has exhibited an intent to impose civil sanctions: "[O]nly the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960). The issue to be addressed by this court is whether the sanctions are so severe that the excessive nature of the penalty has "transformed what was clearly intended as a civil remedy into a criminal penalty." *Rex Trailer Co. v. United States,* 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956).

The Mayers' argument that the CMPAA is criminal in nature is primarily based on two aspects of the act. First, the CMPAA provides for a $2,000 civil penalty for *each* item falsely claimed. It is contended that such a penalty based upon individual line items rather than the total claim is so excessive as to constitute a criminal penalty. Second, appellants emphasize that the pen-

alty is based on the amount claimed rather than the actual loss sustained by the government. Such a process, it is argued, is designed to exact retribution rather than restitution.

We find this argument unpersuasive. Numerous statutes which exact heavy civil penalties have been held constitutional. *See, e.g., Rex Trailer Co., Inc. v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956) ($2,000 penalty per fraudulent act permissible under Surplus Property Act of 1944); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943) (False Claims Act). Just as these acts have been found to be permissible civil penalties, neither does the CMPAA violate the mandate of the constitution.

The basic premise of appellant's argument is that the civil penalty grossly exceeds the damages sustained by the government. Such a presumption is incorrect. The costs which fraud has placed upon our nation's Medicare and Medicaid programs have been severe. *See* Kusserow, *Civil Money Penalties Law of 1981: A New Effort to Confront Fraud and Abuse in Federal Health Care Programs,* 58 Notre Dame L.Rev. 985 (1983). It has been estimated that as much as ten percent of federal funds allocated to health care programs may be lost each year to fraudulent claims. *Id.* at 985 n. 1. The cost of investigating and prosecuting such fraudulent claims has been extremely costly as well. Appellant is correct that the civil penalty imposed does exceed the amount that was directly disbursed as a result of the defendants' fraudulent conduct. Appellant, however, fails to recognize that each fraudulent claim filed exacts an immense toll from society. Just as punitive damages in tort law or treble damages under antitrust law encompass a civil remedy in excess of the tangible damages sustained by a plaintiff, here the government has made a determination that activities in violation of the CMPAA result in damages in excess of the actual amount disbursed by the government to the fraudulent claimant. Such a legislative determination is not constitutionally infirm.

■ Additionally, it is argued that the CMPAA is unconstitutional as applied to the Mayers. The Mayers sought reimbursement in the amount of $145,550 for the fraudulent items presented. The Mayers actually received a total of $24,697.73 from the Medicare program toward these claims. The penalty assessed against the Mayers was in the amount of $1,791,100.[1] Although the judgment imposed is seventy times greater than the amount actually collected from the medicare program for these false claims, the amount of the judgment does not result in an unconstitutional application of the CMPAA. The size of the penalty is a direct result of the defendants' conduct. The defendants chose fraudulently to request payment for 2,702 items. We also note that the aggravating circumstances in this case amply justify the award. Among numerous other aggravating circumstances, the Administrative Law Judge found that the 2,702 fraudulent claims were but a small part of a larger pattern of activity. Furthermore, the Mayers attempted to deceive investigators by fabricating documents during the course of the investigation. In light of the Mayers' conduct, the civil penalty imposed by the Administrative Law Judge was proper.

## II. OTHER CLAIMS RAISED BY APPELLANT

■ The administrative law judge found that Mayers knew or should have known that the claims filed contained false information. The CMPAA specifically provides for liability if a "person knows or has reason to know [that a medical item or service] was not provided as claimed." 42 U.S.C. § 1320-7a(a)(1)(A) (1982). In spite of the clear wording of the statute, appellant contends that actual knowledge must be established to impose liability under the

---

1. Under the CMPAA, the ALJ could have imposed a civil penalty of $5,404,000 based on the 2,702 items fraudulently claimed. The ALJ, however, determined that an award of $1,791,-000 would be sufficient to protect the government's interest.

CMPAA. Appellant fails to cite any authority indicating that a more rigorous standard is constitutionally required before imposing a civil penalty. A *criminal* statute may constitutionally impose a fine or imprisonment based upon a defendant's negligent conduct. The Mayers, however, argue that a *civil* penalty may not be imposed where they knew or should have known that their conduct was wrongful. Such an argument must be rejected.

■ Appellants contend that the CMPAA and its implementing regulations are vague and ambiguous. Essentially, it is argued that one could reasonably interpret the definition of "physician" under the Social Security Act to encompass a chiropractor. Therefore, appellants conclude that the act fails to place them on reasonable notice that their conduct violated the CMPAA.

The Administrative Law Judge properly concluded that the Mayers were put on notice that their conduct violated the CMPAA. Each claim form submitted by the Mayers contained the following printed provision:

> For services to be considered incident to a physician's professional service, (1) they must be rendered under the physician's immediate personal supervision by his/her employee, (2) they must be an integral, although incidental part of a covered physician's service, (3) they must be of kinds commonly furnished in physicians' offices, and (4) the services of non-physicians must be included on the physician's bills.

The Social Security Act unambiguously provides that a chiropractor's services are not routinely covered. Such services are covered "only with respect to treatment by means of manual manipulation of the spine (to correct a sublaxation demonstrated by X-ray to exist) which he is legally authorized to perform by the State or jurisdiction in which such treatment is provided." 42 U.S.C. § 1395x(r) (1982). In light of the explicit detail in which Congress narrowly defined reimbursable chiropractic services, no individual could reasonably conclude that other services performed by a Doctor of Chiropractic medicine would be reimbursable.

The record shows that the Mayers engaged in an elaborate scheme of hiring physicians of foreign extraction for no purpose other than to obtain medicare billing numbers. The Administrative Law Judge found that the Mayers would not have done so if they honestly believed all chiropractic services were reimbursable. The record makes it clear that the Mayers continued to rubber stamp the signatures of physicians to Medicare claims during periods when the physicians were no longer employed. The Mayers intentionally prepared post-dated physicians orders after the Medicare investigation was begun. This effort to camouflage their path further refutes their assertion that they believed that all chiropractic services were covered by the Social Security Act.

The Mayers additionally claim that the Department of Health and Human Services failed to respond to their inquiry concerning the propriety of their conduct. This claim is without merit. The Mayers were specifically advised that services had to be ordered and supervised by a medical doctor for such services to be reimbursable.

The Administrative Law Judge heard nearly two weeks of testimony detailing the Mayers fraudulent conduct. The government entered into evidence 480 written exhibits at the Mayers' hearing. In spite of the voluminous record supporting each element of the Administrative Law Judge's decision, the Mayers argue that the determination was not supported by substantial evidence and was arbitrary and capricious. This claim is without merit.

Also without merit is appellant's argument that the Administrative Law Judge acted improperly by hearing evidence beyond the scope of the claims alleged by the government. The Administrative Law Judge properly heard evidence of aggravating facts in order to determine appropriate damages.

For the foregoing reasons, the decision of the Department of Health and Human Services is

ENFORCED.