941 F.2d 678
 34 Soc.Sec.Rep.Ser. 379, Medicare & Medicaid Guide
P 39,520
ANESTHESIOLOGISTS AFFILIATED, an Iowa Partnership;
James A. Barnett, D.O.; James A. Barnett, D.O., P.C.;
G. Robert Loerke, D.O.; G. Robert Loerke, D.O., P.C.;
John P. McDonogh, CRNA; John P. McDonogh, CRNA, P.C.;
O. Rex Nelson, CRNA; O. Rex Nelson, CRNA, P.C.;
James E. Sykes, D.O.; James E. Sykes, D.O., P.C.;
Steven R. Quam, D.O.; Steven R. Quam, D.O., P.C.; Petitioners,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Respondent.
 No. 90-2387.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 13, 1991.
Decided Aug. 9, 1991.
 
 Donna Thiel, argued (Michael Flanagan, on brief), Washington, D.C., for petitioner/appellant.
 John Hoyle, argued (Anthony Steinmeyer, on brief), Washington, D.C., for appellee/respondent.
 Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 Petitioners were found to have submitted 208 false Medicare claims. They now seek review of a civil monetary penalty and assessment of $258,000 imposed on them pursuant to the Civil Monetary Penalties Law (CMPL) 42 U.S.C. § 1320a-7a. We affirm.
 
 I.
 
 2
 Petitioners are individual partners of Anesthesiologists Affiliated, the professional corporations of each of the doctor-partners, and the partnership itself (collectively AA), that provide anesthesia services to patients at the Des Moines, Iowa, General Hospital. The Office of the Inspector General of the Secretary of the United States Department of Health and Human Services notified AA that the Inspector had discovered that AA had filed false Medicare claims, that it would be penalized, and that several doctors, partners of AA, would be excluded from participation in Medicare and Medicaid for a number of years. AA requested a hearing before an Administrative Law Judge.
 
 
 3
 Following a nine-day hearing that resulted in a voluminous record, the ALJ filed a sixty-seven page decision in which he found that AA had presented or caused to be presented to Blue Shield of Iowa, the Medicare carrier, claims for items or services that it knew or should have known were not provided as claimed. A number of these claims falsely identified the certified registered nurse anesthetists (CRNAs) who administered the anesthesia services claimed as employees of AA. The ALJ concluded that AA knew or should have known that the CRNAs were not its employees and knew or should have known that AA should not have submitted claims to Medicare for work done by CRNAs that were not employees of AA. The second group of false claims were submitted for reimbursement for "pump monitoring," a function of another professional during open heart surgery, which AA anesthesiologists or CRNAs did not perform as claimed. Other false claims included listing two anesthesiologists as performing services, when in fact only one was present during surgery, and claiming reimbursement for extra services that were in fact included in base anesthesia charges, and thus double billing Medicare.
 
 
 4
 All told, the Inspector alleged that 211 false claims amounting to $101,518 were submitted to Medicare by AA. The ALJ concluded that AA was responsible for submitting 208 false claims to Medicare, and imposed monetary penalties of $208,000 and aggregate assessments of $50,000. The ALJ excluded from participation in Medicare one physician and two CRNAs for three years each, and two physicians for two years each. Overall, the ALJ found that the claims submitted by AA "evidence a pattern ... of willfully ignoring both Medicare reimbursement criteria and the facts of the cases for which they were claiming reimbursement, in order to maximize their reimbursement from Medicare." Decision of Administrative Law Judge at 36. The departmental appeals board declined to review the ALJ's decision, which therefore became the final decision of the Secretary of Health and Human Services, and this appeal followed.
 
 II.
 
 5
 The CMPL authorizes the Secretary of Health and Human Services, through the Inspector, to impose civil monetary penalties and assessments against any health care provider that presents a claim to Medicare that the Secretary determines:
 
 
 6
 is for a medical or other item or service that the person knows or should know was not provided as claimed[.]
 
 
 7
 42 U.S.C. § 1320a-7a(a)(1)(A). The Secretary may impose a penalty of up to $2000 for each such false item or service and an assessment of up to twice the amount claimed, and has the authority to exclude the provider from Medicare and Medicaid programs. 42 U.S.C. § 1320a-7a(a). The findings of the Secretary with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, are conclusive. 42 U.S.C. § 1320a-7a(e). (For the history and purpose of the CMPL, see Mayers v. U.S. Dep't of Health & Human Services, 806 F.2d 995 (11th Cir.1986).)
 
 
 8
 Of the 128 false claims in the first group, submitted for anesthesia not involving open heart surgery, more than 100 represented that anesthesiologists had provided all of the claimed services, when in fact, as found by the ALJ, AA knew that some of the services in each claim had been provided by CRNAs instead of anesthesiologists. In the rest of the claims in the first group, the ALJ found that AA represented that the services were provided by CRNAs who were its employees, when AA knew or should have known that the CRNAs were not its employees.
 
 
 9
 AA directs its argument toward the "employee" claims. AA argues that the ALJ's formulation of the "should know" standard was erroneous; insufficient evidence supports the ALJ's conclusion that AA knew or should have known that CRNAs were not employees of AA; that the CRNAs were in fact employees of AA; and that the ALJ shifted the burden of proof, erroneously requiring AA to prove that its claims were not false.
 
 
 10
 We agree with the ALJ that the degree of control and supervision retained by AA over CRNAs was minimal--and intentionally so. CRNAs were not considered employees of AA: two of the CRNAs were partners in AA; another entered into an agreement with AA explicitly stating that his relationship was that of an independent contractor; AA did not withhold federal income tax from CRNAs and made no Social Security contributions on their behalf; and AA described their relationship with CRNAs to third parties as that of an independent contractor. It appears from the record as a whole that CRNAs were deliberately not employees of AA for every other purpose than for filing Medicare claims.
 
 
 11
 As for whether AA should have known the employment status of CRNAs, we agree with the ALJ's reasoning that notification by the Medicare carrier that the employment status of CRNAs was a pivotal element in completing the requirements for reimbursement dispels any doubt that AA should have known of, or educated itself about, the CRNAs' employment status. We perceive from the record an indifference to the accuracy of Medicare claims that colors AA's assertion that the burden imposed on it to determine whether or not CRNAs were employees was too high. As stated by the ALJ, AA "had an obligation to find out whether their relationship with the CRNAs met the regulatory definition of employment before they billed for the CRNAs' services as if they were employees." ALJ at 55.
 
 
 12
 We find to be without merit AA's argument that the ALJ shifted the burden of proof. The ALJ correctly relied on the evidence presented by the Inspector in reaching its conclusions that claims presented to Medicare did not accurately reflect the services rendered by AA and resulted in overpayment.
 
 III.
 
 13
 The second group of claims, 80 claims for anesthesia services rendered by AA during coronary artery bypass graft and other cardiac surgeries, the ALJ decided were false because, in one manner or another, they claimed reimbursement for the operation and monitoring of the heart-lung machine (perfusion services) when "[t]he credible testimony was that the heart-lung machine was neither operated nor closely monitored by an anesthesiologist or a CRNA." ALJ at 47. The ALJ found that in seven of the 80 open heart surgery claims, AA represented that it provided services described as "recording & monitoring of intracardiac pressures heart lung machine EKG arterial & central venous pressures cardiac output measurements," when it knew that these representations were not accurate. The ALJ also determined that AA knew that claims for "pump monitoring" in the other 73 counts were for items or services not provided as claimed.
 
 
 14
 The phrase "pump monitoring" was used by AA as a shorthand to instruct its billing clerk to make claims for "recording & monitoring of intracardiac pressures heart lung machine EKG arterial & central venous pressures cardiac output measurements." The ALJ found that AA knew that "pump monitoring," and the services that that shorthand term includes, were not services provided as represented in Medicare claims.
 
 
 15
 AA argue that even if it misrepresented these claims for "pump monitoring," it was merely a matter of unartful description of the services it provided and that it was seeking reimbursement for legitimate services provided in addition to the normal anesthesia services. Much of AA's argument relies on its theory that even if it did not provide services as claimed, it provided other reimbursable services. We are not persuaded by this argument. Section 1320a-7a(a)(1)(A) prohibits the submission of claims which were not provided as described in the Medicare claim submitted. The standard of care imposed by this requirement is an exacting one, and an "unartful" description of medical services in a Medicare claim is a description of services that were not provided as claimed.
 
 
 16
 Based on the record as a whole, we conclude that there is substantial evidence to support the ALJ's factual findings, and we agree with the conclusion that AA presented claims to Medicare which it knew or should have known did not represent services as actually performed. Accordingly, the decision of the Secretary of Health and Human Services is affirmed.