Harold **CHAPMAN** and **Autumn Manor, Inc.,** Petitioners,

v.

**UNITED STATES of America, DEPARTMENT OF HEALTH & HUMAN SERVICES,** Respondents.

No. 85–2557.

United States Court of Appeals, Tenth Circuit.

June 15, 1987.

W. Boyd Evans, Charles H. Apt, III, of Glaves, Evans, Hoke & Apt, Wichita, Kan., for petitioners.

Richard K. Willard, Asst. Atty. Gen., Anthony J. Steinmeyer, John C. Hoyle, U.S. Dept. of Justice, Civil Div., Washington, D.C., Benjamin L. Burgess, Jr., U.S. Atty., Topeka, Kan., for respondents.

Before SEYMOUR, BARRETT and BALDOCK, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 34.1.8(c) and 27.-1.2. The cause is therefore ordered submitted without oral argument.

This case requires us to interpret the Civil Monetary Penalties Law (CMPL) in the Social Security Act, 42 U.S.C. 1320a–7a (1986) (as amended). In particular, we must determine for the first time whether the monetary double assessments provided for under the CMPL must be calculated by or limited to the actual damages incurred by the government in cases in which such damages are ascertainable.

Appellant Harold Chapman was the president and principal stockholder of Autumn Manor, Inc., a Kansas corporation that owned and operated four nursing homes in Kansas. In August, 1982, Chapman submitted four cost reports to the Kansas Medicaid agency requesting reimbursement for care provided by the nursing homes to Medicaid beneficiaries during the one year period of July 1, 1981, to June 30, 1982. These four reports, one for each of the four nursing homes owned by Chapman, contained nineteen false line item cost entries for items and services purportedly provided by the nursing homes. The homes had not, in fact, provided the reported items or services. The aggregate amount involved in the nineteen false claims was $118,136. As a result of these false claims, the Kansas Medicaid agency made overpayments of $21,115 to Chapman and Autumn Manor, Inc. before a routine field audit of the four nursing homes revealed the fraud.

In criminal proceedings brought by the State of Kansas, Chapman was convicted by a jury on four counts of making a false writing. He was fined $20,000, representing $5,000 for each count. Chapman also received a suspended jail sentence on the condition that he divest himself of ownership and operation of all nursing homes.

In June, 1984, the Inspector General of the Department of Health & Human Services proposed the imposition of penalties and assessments against both Chapman and Autumn Manor, Inc. under the CMPL. The Inspector General sought a $2,000 penalty for each of the nineteen false Medicaid claims filed by Chapman and proposed an additional assessment of $118,136, for a total penalty and assessment of $156,136. Chapman requested a hearing before an Administrative Law Judge (ALJ) pursuant to the CMPL and in October, 1984, the ALJ issued a decision accompanied by a written memorandum imposing the penalty and assessment amounts proposed by the Inspector General. Chapman then filed exceptions to the ALJ's determination with the Secretary of Health & Human Services but the Secretary sustained the ALJ's decision. Chapman now brings this appeal.

Before considering Chapman's arguments regarding these civil sanctions imposed upon him by the ALJ, it will be helpful to review the penalty and assessment provisions of the CMPL. Because the Department of Justice often lacks the resources to pursue cases of fraud against the Medicaid and Medicare programs, the act allows the Secretary of Health and Human Services to seek civil remedies as an alternative to criminal prosecution. *See* S.Rep. No. 139, 97th Cong., 1st Sess. 461–62 (1981), *reprinted at* 1981 U.S.Code Cong. & Ad.News 396, 727–28; H.R. Rep. No. 97–158, 97th Cong., 1st Sess., Vol. II, 344 (1981). The act provides for the imposition of civil monetary penalties and as-

sessments through administrative proceedings upon anyone making false or improper claims for Medicare or Medicaid payments. According to the statute, any person or entity presenting a claim for Medicaid or Medicare benefits for medical items or services that they know or have reason to know were not provided ...

shall be subject, in addition to any other penalties that may be prescribed by law, to a civil money penalty of not more than $2000 for each item or service. In addition, such a person shall be subject to an assessment of not more than twice the amount claimed for each such item or service in lieu of damages sustained by the United States or a state agency because of such claim. 42 U.S.C. § 1320a–7a(a).

In determining the amount and scope of a penalty or assessment imposed pursuant to this section, 42 U.S.C. § 1320a–7a(c) provides that the Secretary shall take into account ...

(1) the nature of claims and the circumstances under which they were presented,

(2) the degree of culpability, history of prior offenses, and financial condition of the person presenting the claims, and

(3) such other matters as justice may require.

In addition to the statute, the Secretary of Health and Human Services issued rules further explaining how mitigating and aggravating circumstances should be considered by the Inspector General in determining the amount of penalty and assessments imposed upon a violator. Among other things, the guidelines indicate that where substantial mitigating circumstances are present, the penalty and assessment should be set at an amount sufficiently below the maximum permitted by the statute to reflect that fact. The guidelines further instruct that where substantial aggravating circumstances are present, the amount of the penalty and assessment should be set at an amount sufficiently close to the maximum permitted by the statute to reflect that fact. 45 C.F.R. 101.106(c) (1984).

## I.

Chapman argues in this appeal, as he did in his appeal to the Secretary, that the Inspector General and the ALJ erred in imposing an assessment of $118,136 for the nineteen false claims he filed. Specifically, Chapman points out that while the nineteen false line cost entries add up to $118,136, the actual overpayment to Autumn Manor, Inc. was only $21,115. Moreover, the State of Kansas immediately recouped the $21,115 by offsetting it against the amount it owed Autumn Manor, Inc. for legitimate claims. Chapman argues that it is inappropriate for the government to measure the assessment by twice the amount falsely claimed when the actual losses are substantially less, when the actual losses have been recouped, and when the only real expense is the small administrative cost incurred by the government in recouping the overpayment.

In formulating this argument, Chapman begins by noting that the purpose of the CMPL is to both penalize the person who files false claims and to compensate the government for losses incurred as a result of false claims. He points out that the provision in the statute for "a civil monetary penalty of not more than $2,000 for each item" represents the maximum penalty that may be awarded under the statute and that the provision allowing for an assessment of "not more than twice the amount claimed ... in lieu of damages" represents the maximum amount the government may receive in compensation for losses incurred as a result of false claims.

Chapman argues that the purpose of the double assessment provision is to insure that the government is made completely whole where damages are not readily ascertainable. He cites to the Secretary of Health and Human Services's comments on the CMPL in which the Secretary explained, "The amount of actual damages sustained as a result of fraud has often been difficult to prove.... Congress clearly intended to obviate the need for the government to prove the amount of dam-

ages in order to make an assessment." 48 Fed.Reg. 38,830 (1983). Chapman argues that where, as here, the actual losses are readily ascertainable, there is no reason to grant an award of twice the amount claimed.

No court has specifically considered this aspect of the assessment provision of the CMPL. Chapman points out, however, that the act bears a close resemblance to the False Claims Act, 31 U.S.C. § 3729 (1983), which also provides for a $2,000 penalty per false claim and an assessment of double damages. Chapman also relies on two cases wherein the False Claims Act has been judicially scrutinized. In *United States, ex rel. Marcus v. Hess*, 317 U.S. 537, 551–552, 63 S.Ct. 379, 387–388, 87 L.Ed. 443, *reh'g denied,* 318 U.S. 799, 63 S.Ct. 756, 87 L.Ed. 1163 (1943), the Supreme Court observed that "the device of double damages plus a specific sum was chosen to make sure that the government would be made completely whole." In *United States v. Bornstein*, 423 U.S. 303, 315, 96 S.Ct. 523, 531, 46 L.Ed.2d 514 (1976), the Supreme Court held that in calculating a double assessment under the False Claims Act, the government's actual damages should first be doubled, and then subtractions for any compensatory payments should be made to arrive at the amount of an assessment.

Arguing by analogy from these cases construing the False Claims Act, Chapman urges that under the CMPL, where the government's actual damages are readily ascertainable, the purpose of making the government whole is served by an assessment based on the known damages. Since in this case there was an actual overpayment of $21,115, Chapman reasons that this amount should be doubled to equal $42,231, and reduced by $21,115 to reflect the fact that the State of Kansas set off the overpayment against other payments it owed Autumn Manor, Inc. By this formulation, which Chapman says is mandated by *Bornstein,* the assessment against him should have been in the neighborhood of $21,115 rather than $118,136.

The government contends that the ALJ's assessment of $118,136 was well within the amount authorized by the clear language of the statute. Since the statute authorized the ALJ to levy an assessment of not more than twice "the amount claimed," and since Chapman's false claims add up to $118,136, the government argues that the ALJ might have legally imposed an assessment of as much as $236,272. Combined with the $38,000 penalty assessments, Chapman's total fine might have been $274,272. Thus, Chapman's actual fine of $156,136 in penalty and assessments represented only fifty-seven percent of the maximum amount authorized by the statute.

The government does not deny that actual damages play a role in monetary assessments for false claims under the CMPL. It argues, however, that the consideration of actual damages should occur in connection with the analysis of mitigating and aggravating circumstances and in connection with 42 U.S.C. § 1320a–7a(c)(3) which directs the decision maker to consider "such other matters as justice may require." In his comments on the subject, the Secretary of Health and Human Services explained that "in instances where actual damages to the government may be readily calculated, perhaps as a result of evidence supplied by respondents in mitigation of a proposed penalty, the amount of actual damages suffered by the government will be a factor that justice requires be taken into account in arriving at a proper assessment." 48 Fed.Reg. 38,830.

■ An agency director's interpretation of a statute that his agency is entrusted to administer is entitled to considerable deference and our review of such an interpretation is limited to determining whether the administrator's construction of the statute is "reasonable." *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837, 845, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 *reh'g denied* 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). While this deference does not mean that the Secretary can tailor "congressional intent out of whole cloth," *Griffon v. United States Dept. of Health and Human Services,* 802

F.2d 146, 147 (5th Cir.1986), it is our conclusion that the Secretary's reading of the CMPL satisfies the standard of reasonableness.

Though the legislative history does not explain Congress's intentions regarding this aspect of the CMPL, it can be fairly reasoned that the difference in phrasing between the False Claims Act and the CMPL is indicative of congressional purpose. By authorizing assessments of twice "the amount claimed" rather than twice "the amount of damages," Congress seems to have deliberately shifted the focus away from the actual loss sustained and onto the amount claimed as a basis for assessments.

■ It is not unusual for statutes to provide for a heavy civil penalty, as an alternative to criminal punishment, to discourage objectionable activity and to insure adequate compensation. One court has noted, in reference to the CMPL, "Just as punitive damages in tort law or treble damages in anti-trust law encompass a civil remedy in excess of the tangible damages sustained by the plaintiff, here the government has made a determination that activities in violation of the [CMPL] result in damages in excess of the actual amount disbursed by the government to the fraudulent claimant." *Mayers v. U.S. Dept. of Health & Human Services*, 806 F.2d 995, 999 (11th Cir.1986). Thus, we find entirely reasonable the Secretary's opinion that by providing for an assessment in lieu of damages, Congress intended to obviate the need for the government to tie assessments to proven actual damages.

The cases cited by Chapman specifically construing the False Claims Act are distinguishable since the language in that act differs from the language in the CMPL. While the False Claims Act provides for the imposition of "2 times the amount of damages the Government sustains ...", the CMPL authorizes an assessment of up to "twice the amount claimed...." The *Bornstein* formula of first multiplying the actual damages and then subtracting compensatory payments seems to be mandated by the language in the False Claims Act but not by the language in the CMPL.

■ This does not mean that actual damages are wholly irrelevent under the CMPL. Though it is not tied to actual damages, the assessment provision nonetheless contemplates providing adequate compensation for the government. But it is reasonable to conclude, as the Secretary did, that actual damages should be considered in connection with the balancing of mitigating and aggravating circumstances and with 42 U.S.C. § 1320a–7a(c)(3), which directs the decision maker to consider "such other matters as justice may require." In this case, the ALJ specifically indicated that he had considered the amount Chapman had received as a result of the false claims and the subsequent set-off by the State of Kansas. The ALJ concluded, however, that the $21,115 setoff did not make up for expenses "such as the cost of investigation by the federal agency, the cost of pursuing administrative sanctions, and the cost of providing the hearing...." As the ALJ explained, "The Government was not required to account for these costs in defending the assessments, but it is not unreasonable to assume that they exceeded $118,136." This intepretation and application of the statute seems to be what Congress had in mind when it passed the CMPL.

## II.

Chapman raises two further objections to the CMPL. We find little merit in either of them. In the first of these objections, Chapman argues that the CMPL is criminal rather than civil in nature. This is so, Chapman argues, because the penalty and assessment amounts levied against him were eight times greater than the amount he fraudulently received from the government and such a penalty is so severe as to be criminal or quasi-criminal in nature. *See Helvering v. Mitchell*, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938). Since he had already been convicted of a criminal offense for the same cause of action in Kansas, Chapman argues that the second action against him under the CMPL, criminal in nature, placed him in double jeopardy

in violation of the Fifth Amendment of the United States Constitution.

In determining whether a statutorily defined penalty is civil or criminal, we must consider, first, what Congress intended and, second, whether the scheme is so punitive in either purpose or effect as to negate congressional intent. *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742, *reh'g denied,* 448 U.S. 916, 101 S.Ct. 37, 65 L.Ed.2d 1179 (1979). We note, to begin with, that Congress specifically designated the CMPL by title to be a "civil" monetary penalty. Only the "clearest proof" will suffice to override this clear manifestation by Congress of its intention to create a sanction that is civil in nature. *Id.* at 249, 100 S.Ct. at 2641. Assuming *arguendo* that the penalties and assessments against Chapman exceed the actual damage he caused the government, this does not necessarily overcome a clear expression of intention by Congress and transform a civil remedy into a criminal sanction. It is well settled that the Congress need not limit itself to the amount of actual damages in calculating a civil penalty or assessment. *See e.g., One Lot Emerald Cut Stones & One Ring v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, *reh'g denied* 318 U.S. 799, 63 S.Ct. 756, 87 L.Ed. 1163 (1943). We conclude that there is no basis for holding that the CMPL is criminal in nature. *Accord, Mayers v. U.S. Department of Health and Human Services,* 806 F.2d 995 (11th Cir. 1986) (CMPL is civil, not criminal, though penalty and assessment was seventy times greater than the amount fraudulently collected by defendant).

Even if Chapman could persuade us that the sanctions under the CMPL were criminal, it would be of little benefit to him since he has misconstrued the double jeopardy protections of the Constitution. The double jeopardy clause does not prohibit the federal government from imposing criminal sanctions following state criminal sanctions since both the state and federal governments have the power, inherent in any sovereign, to independently define and punish an offense. *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). Where the defendant's act violates both state and federal law, the defendant has committed two different offenses at once. A conviction for the state offense is not a conviction of the different federal offense and, hence, there is no double jeopardy. *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922).

Chapman's last objection to the penalties and assessments imposed upon him under the CMPL is that the ALJ failed to consider and properly weigh the mitigating circumstances he says are present in his case. Chapman calls our attention to, among other things, the fact that he did not challenge the accuracy of the audit though he had an opportunity to do so. He points out that he has paid fines in the amount of $20,000 to the state of Kansas and that otherwise he has no prior criminal record. Chapman argues that these factors should have been considered in mitigation of his punishment under the CMPL.

In reviewing an agency's imposition of sanctions within limits specified by a statute, we will not overturn an agency's choice of sanctions unless we find that those sanctions are unwarranted in law or without justification in fact. *Butz v. Glover Livestock Commission,* 411 U.S. 182, 185, 93 S.Ct. 1455, 1457, 36 L.Ed.2d 142, *reh'g denied,* 412 U.S. 933, 93 S.Ct. 2746, 37 L.Ed.2d 162 (1973). The ALJ's weighing of the mitigating and aggravating circumstances in this case appears to be warranted by both the facts and the law.

On the aggravating side of the balance, the record shows that Chapman acted deliberately to submit false data to the Kansas Medicaid agency so that nursing homes owned by him would be reimbursed for goods and services they did not provide. Further, when an audit was scheduled that threatened to reveal the false claims, Chapman had false invoices prepared and checks issued, but not signed, in an effort to cover up the discrepancies that the state audit would reveal. Under the circumstances, we are inclined to agree with the Secretary

that Chapman "can hardly get much credit for passing up an opportunity to contest administratively the totally accurate audit determination...." Further, the fact that Chapman has already paid fines to the State of Kansas does not constitute a mitigating circumstance under the CMPL. The statute clearly provides that the civil money penalties and assessments shall be "in addition to any other penalties that may be prescribed by law...." 42 U.S.C. § 1320a–7a(a).

 As to Chapman's otherwise clean record, the ALJ indicated that he had taken this into consideration but was "not persuaded that respondents' penalty and assessment should be mitigated solely because there were not prior offenses." The ALJ thus complied with 42 U.S.C. § 1320a–7a(c)(2) instructing that he consider a defendant's prior record. We cannot hold that the ALJ's conclusion that this circumstance alone was not enough to mitigate the sanctions was unwarranted by the law or without justification in fact. Moreover, as noted earlier, the Secretary's guidelines for calculating mitigating and aggravating circumstances indicate that where substantial mitigating circumstances are present, the penalty and assessment should be set at an amount sufficiently below the maximum permitted by the statute to reflect that fact. Here, the total of the penalties and assessments imposed on Chapman, $156,318, represents fifty-seven percent of the maximum amount allowable under the statute. Our review discloses few mitigating circumstances under the facts of this case. Even so, the penalty reflects a fair amount of leniency on the part of the Inspector General and ALJ. Under the circumstances, we hold that Chapman's objections are without merit.

AFFIRMED.