The **RAILROAD COMMISSION OF TEXAS, and J.B. Watkins, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Northern Natural Gas Company, Division of Enron Corp.; Phillips Petroleum Company; Cabot Pipeline Corporation; Dorchester Master Limited Partnership; Texaco Producing Inc.; Mobil Producing Texas & New Mexico Inc.; Natural Gas Pipeline Company of America; the Energy Issues Intervention Office of the Minnesota Department of Public Service; Northern States Power Companies, Intervenors.**

Nos. 86–1681, 86–1688.

United States Court of Appeals, Tenth Circuit.

April 28, 1989.

Renea Hicks (Jim Mattox, Atty. Gen. of Texas, Mary F. Keller, Executive Asst. Atty. Gen. for Litigation; and Larry J. Laurent, Sp. Asst. Atty. Gen., Austin, Tex., General Environmental and Natural Resources Group, on the briefs), Special Asst. Atty. Gen. of Texas, Attorney of Record, for the Railroad Commission of Texas.

Joe H. Foy, of Bracewell & Patterson, of Houston, Tex., for J.B. Watkins.

John H. Conway (Catherine C. Cook, Gen. Counsel, and Jerome M. Feit, Sol., Washington, D.C., with him on the brief), Attorney, for F.E.R.C.

James L. Trump (Philip R. Ehrenkranz and Paul F. Forshay, of Squire, Sanders & Dempsey, of Washington, D.C., with him on the brief), of Squire, Sanders & Dempsey, of Washington, D.C., for Dorchester Master Limited Partnership.

John L. Williford and Jennifer A. Cates, of Bartlesville, Okl., for Phillips Petroleum Co.

Paul E. Goldstein, Jerome Mrowca, and Barbara A. Gustafson, of Lombard, Ill., for Natural Gas Pipeline Co. of America.

Frank J. Duffy, Vice President and General Counsel, and Jane G. Alseth, of Northern Natural Gas Company, Division of Enron Corp., of Omaha, Neb., Patrick J. McCarthy, of Adams and McCarthy, of Omaha, Neb., and George J. Meiburger and Steve Stojic, of Gallagher, Boland, Meiburger and Brosnan, of Washington, D.C., for Northern Natural Gas Co., Division of Enron Corp.

Gene R. Sommers, of Northern States Power Company, of Minneapolis, Minn., for Northern States Power Companies.

Christopher K. Sandberg, of the State of Minnesota, Attorney General's Office, of St. Paul, Minn., for the Energy Issues Intervention Office of the Minnesota Department of Public Service.

Before LOGAN, and TACHA, Circuit Judges, and ANDERSON, District Judge.*

TACHA, Circuit Judge.

This case presents for review, pursuant to 15 U.S.C. § 717r(b) and 15 U.S.C. § 3416(a)(4), two orders issued by the Federal Energy Regulatory Commission (FERC). Those orders determined that J.B. Watkins had violated federal law by selling natural gas at a price in excess of the statutorily established maximum price. We hold that there are no procedural grounds for reversal of FERC's orders, that FERC's findings of fact are based upon substantial evidence, and that its conclusions of law are reasonable. We affirm.

## I.

This appeal is part of a continuing controversy arising out of certain oil production practices in the Texas Panhandle Field. The general geological and regulatory background of that controversy is set forth in our related decision of *Walker Operating Corp. v. FERC*, 874 F.2d 1320, 1323–1324 (10th Cir.1989). In 1984 FERC issued an order requiring thirty-seven oil well operators in the Panhandle Field area to show cause why they should not be found to have violated section 7(b) of the Natural Gas Act (NGA), 15 U.S.C. § 717f(b), by the diversion of natural gas dedicated to interstate commerce, and section 504(a)(1) of the Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. § 3414(a)(1), by selling that gas at a price in excess of the statutorily established maximum price. *Stowers Oil & Gas Co.*, 26 FERC ¶ 61,207, at 61,481 (1984) (show cause order).

Within the Panhandle Field, Texas has established the area that may be efficiently and effectively drained by each oil well and by each natural gas well. These areas, called proration units, allocate ten or twenty acres to each oil well and 160 or 640 acres to each gas well, with the surface areas of several oil proration units often overlapping with the surface area of a gas proration unit. This system is feasible because the hydrocarbons constituting oil, being denser, are generally found at a greater depth than the adjacent gaseous hydrocarbons. In the Panhandle Field, moreover, the production of oil will usually result in some natural gas also being produced from the oil well.

FERC found that thirty-five of the thirty-seven oil well operators had produced natural gas from within a gas proration unit and therefore had violated federal law. *Stowers Oil & Gas Co.*, 32 FERC ¶ 61,043 at 61,136 (1985) (opinion no. 239). We affirmed that order in *Walker Operating*. The Commission found that the evidence as to two of the operators, J.B. Watkins and Meyer Farms, Inc., was "inconclusive" and directed the enforcement staff, "utilizing an expert if necessary, to gather data and conduct a recombined fluid sample analysis or any other test(s) necessary on the wells in question to determine whether J.B. Watkins and Meyer Farms are in violation of the Natural Gas Act and/or the Natural Gas Policy Act." *Stowers Oil & Gas Co.*, 32 FERC ¶ 61,043, at 61,136 (1985) (opinion no. 239).

---

* Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

The original show cause order "identified eleven wells operated by Watkins, the Bell 2, 3, 4, 5, 6, 7, 8 and 9 on the Bell lease, the Bell A 1 and 3 on the Bell A lease, and the Bell B 1 on the Bell B lease, and three wells operated by Meyer Farms, the Coffee 1, 2 and 3 on the Coffee lease, in connection with the alleged violations." *Stowers Oil & Gas Co.*, 33 FERC ¶ 63,012, at 65,043–44 (1985) (second recommended decision). On remand to the Administrative Law Judge (ALJ), however, the enforcement staff charged illegal actions regarding only three wells, the Watkins Bell Nos. 8 and 9 and the Meyer Farms Coffee No. 2. *Id.* at 65,055. The ALJ found that Meyer Farms had violated both section 7(b) of the NGA and section 504(a)(1) of the NGPA. *Id.* at 65,057. The ALJ also found that J.B. Watkins had violated section 504(a)(1) of the NGPA. *Id.* at 65,055. Because Watkins sold natural gas to a purchaser in interstate commerce, Watkins did not divert to *intra*state commerce natural gas that was previously dedicated to interstate commerce. *Id.* at 65,043. He was not charged therefore with violation of section 7(b) of the NGA.

In determining that Watkins had violated section 504(a)(1) of the NGPA, the ALJ first had to determine whether Watkins was producing natural gas from reserves dedicated to interstate commerce by Dorchester Gas Producing Company (Dorchester), the company owning the leasehold rights to natural gas produced from beneath the surface acreage at issue in these proceedings (the subject acreage). The gas would have been taken from those reserves if it had been produced from a Dorchester gas proration unit. The ALJ concluded that Texas regulation of the Panhandle Field used the gas-oil contact—the contact line between the gas zone and the oil zone—to divide the overlying gas proration units from the underlying oil proration units. Therefore, if Watkins had produced gas from above the gas-oil contact, he would have been producing gas subject to the statutory price for Dorchester gas— and, consequently, would have been selling gas at a higher ceiling price than that allowed by law.

FERC affirmed the ALJ's "determinations in their entirety, including all findings of fact, conclusions of law, and applications of facts to law." *Stowers Oil & Gas Co.*, 33 FERC ¶ 61,410, at 61,799 (1985) (opinion no. 247). After FERC denied rehearing, *Stowers Oil & Gas Co.*, 34 FERC ¶ 61,255, at 61,442 (1986) (order denying rehearing), J.B. Watkins and Meyer Farms petitioned this court for review of FERC's orders that found them in violation and that denied rehearing. The Railroad Commission of Texas (RCT), the Texas state agency with regulatory authority over the production of oil and natural gas, also petitioned for review of the FERC orders. Subsequently, Meyer Farms and FERC reached a settlement. Therefore, only J.B. Watkins and the RCT remain before this court as petitioners on this appeal.

## II.

The petitioners contend that FERC's order should be overturned on jurisdictional, procedural, evidentiary, and substantive law bases. Before reviewing FERC's findings of fact and conclusions of law, we turn first to the jurisdictional and procedural issues.

FERC, an administrative agency, must operate within the statutory jurisdiction given it by Congress. Congress, moreover, has directed the reviewing courts to "hold unlawful and set aside agency action ... found to be ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). In order to determine whether Watkins had violated federal law, FERC found it necessary to inquire into such matters as the geological structures underlying the subject acreage, the applicable proration units for the subject acreage, the gas-oil contact within specific wells, and the properties of the various hydrocarbons produced from those wells. The petitioners contend that such an examination is beyond FERC's jurisdiction. They state that FERC's actions amount to an impingement upon the regulation of "the production or

gathering of natural gas" reserved to the states in the NGA, 15 U.S.C. § 717(b).[1]

■ We hold that FERC's inquiry into these matters was a necessary aspect of its enforcement responsibilities and was within the Commission's statutory jurisdiction. The principles and rationale of such a holding are set forth in *Walker Operating*, 874 F.2d at 1328, 1330.

■ The petitioners further contend that even if FERC had jurisdiction to examine certain state law issues, it nevertheless should have abstained from doing so. They assert that FERC should have deferred to Texas authorities on such matters as gas-oil contacts or oil well proration units, citing primarily to the principles of *Burford*-type abstention. *See generally Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). This, again, is indistinguishable from the contentions raised in *Walker Operating*, and we consequently hold that FERC was under no duty to abstain in these matters.[2]

In addition to their jurisdictional arguments, the petitioners contend that FERC's orders should be overturned on procedural grounds. Specifically, the petitioners argue that FERC should not have been allowed to gather additional evidence concerning the Watkins wells once the ALJ and FERC had concluded that the evidence concerning those wells was inconclusive at the time of the ALJ's first recommended decision. The petitioners inveigh against that second stage of investigation as a "'second bite at the apple'" and as "a flagrant abuse of discretion" that "was

arbitrary, capricious, and a violation of Watkins' fundamental due process rights." In addition, Watkins raises objections to the funding of expert witnesses by Dorchester and Northern Natural Gas Company.

Before this court, FERC both disputes the merits of these objections and contends that they are barred by federal statute, because they were not argued first before FERC itself. The NGPA provides that, upon the judicial review of a FERC order issued under the NGPA, "[n]o objection to such order of the Commission shall be considered by the court if such objection was not urged before the Commission in the application for rehearing unless there was reasonable ground for the failure to do so." 15 U.S.C. § 3416(a)(4).

■ We hold that the NGPA bars Watkins' objection concerning the expert witnesses from being considered by this court. The objection was not raised by any of the petitioners in their applications to FERC for rehearing, and the petitioners have not presented this court with any reasonable ground for their failure to do so. The objection, therefore, falls within the clear provision of the statute.

The application of the NGPA provision to the petitioners' objection concerning renewed investigation is less certain. The record before us is unclear as to whether that objection is barred here by the NGPA.[3] Assuming, *arguendo*, that the issue was preserved for review, we hold that the petitioners' objection fails on the merits.

1. For a discussion of the contours of the regulatory scheme allocating specific areas of natural gas regulation to state or to federal authority, see *Walker Operating Corp. v. FERC*, 874 F.2d 1325, 1328 (10th Cir.1989).

2. For our discussion of *Burford*-type abstention and our grounds for distinguishing the present proceedings from *Burford*, see *Walker Operating*, 874 F.2d at 1330–31.

3. The objection was raised by Watkins in Watkins' application for rehearing of FERC opinion no. 239, *Stowers Oil & Gas Co.*, 32 FERC ¶ 61,043 (1985), the earlier FERC order reviewed by us in *Walker Operating*. FERC addressed Watkins' objection in its subsequent order denying rehearing. *See Stowers Oil & Gas*

*Co.*, 33 FERC ¶ 61,207, at 61,426 (1985) (order denying stay and rehearing). That FERC order was then affirmed in *Walker Operating*. In that case, although Watkins was a petitioner, Watkins did not then raise before this court the objection to FERC's additional investigation. Clearly, in its application for rehearing of FERC opinion no. 247, the RCT did not raise the objection, nor is the objection explicitly stated in Watkins' application for rehearing. Watkins did, however, state that he was incorporating some objections from other briefs. As those incorporated briefs are not a part of the record before us, we cannot ascertain with certainty that the objection was not raised.

■ Administrative agencies are, in general, given broad discretion in their choices of procedural particulars. The principal legislative acts administered by FERC are consistent with this general rule, bestowing considerable procedural discretion upon the agency. The NGA declares that "[t]he Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of [the Act]."; 15 U.S.C. § 717o.[4] The NGPA contains virtually identical language regarding FERC's enforcement of its provisions. *See id.* § 3411(a). The NGA, furthermore, provides that:

All hearings, investigations, and proceedings under this [Act] shall be governed by rules of practice and procedure to be adopted by the Commission, and in the conduct thereof the technical rules of evidence need not be applied. No informality in any hearing, investigation, or proceeding or in the manner of taking testimony shall invalidate any order, decision, rule, or regulation issued under the authority of this [Act].

*Id.* § 717n(b); *see also id.* § 717m(a).

An administrative agency "has an affirmative duty to inquire into and consider all relevant facts." *Scenic Hudson Preservation Conference v. Federal Power Comm'n*, 354 F.2d 608, 620 (2d Cir.1965), *cert. denied*, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966). " 'The agency must always act upon the record made, and if that is not sufficient, it should see the record is supplemented before it acts.' " *Id.* at 621 (quoting *Isbrandtsen Co. v. United States*, 96 F.Supp. 883, 892 (S.D.N.

Y.1951), *aff'd by equally divided court sub nom. A/S J. Ludwig Mowinckels Rederi v. Isbrandtsen Co.*, 342 U.S. 950, 72 S.Ct. 623, 96 L.Ed. 706 (1952) (mem.) and *sub nom. Federal Maritime Bd. v. United States*, 342 U.S. 950, 72 S.Ct. 623, 96 L.Ed. 706 (1952) (mem.)). Here, FERC had a duty to act only upon a record that was complete, and FERC acted correctly in conducting additional investigation.

■ Petitioner Watkins further objects to the fairness of FERC's renewed investigation. Watkins apparently contends that, because of FERC's show cause order, Watkins' natural gas purchaser, Northern Natural Gas Company, began to pay into escrow all revenues attributable to Watkins' gas production. The resultant loss of Watkins' revenues therefore caused the curtailment of well maintenance activities on the Watkins wells. The petitioners therefore state that the curtailment of well maintenance "was a direct result of the Commission's 'Show Cause Order' " and caused the Watkins wells to be in a state of disrepair. FERC conducted its tests while the wells were in that state of disrepair and, Watkins contends, therefore penalized him on the basis of evidence unfairly gathered.

This objection is without merit. We find it difficult to reconcile Watkins' declarations with other statements made by the petitioners.[5] Furthermore, Watkins had notice that the enforcement staff would be testing, and he demonstrated that he possessed the ability to repair his wells.[6] Finally, FERC acted within its discretion in issuing the show cause order and in conducting its tests of Watkins' wells. We conclude that the circumstances surround-

---

**4.** The NGA named the Federal Power Commission as the federal agency responsible for the enforcement of the Act. *See* 15 U.S.C. §§ 717a(9), 717l–717o, 717s. In 1977 FERC assumed those enforcement responsibilities. *See* 42 U.S.C. §§ 7172(a), 7341.

**5.** FERC's show cause order was issued on February 15, 1984. *See Stowers Oil & Gas Co.*, 26 FERC ¶ 61,207 (1984) (show cause order). Nevertheless, the petitioners' joint opening brief states that "Northern began paying all revenues attributable to Watkins' gas production into escrow five months before Watkins filed [new well pricing] applications." Since that brief lists

the date of those application filings as March 22, 1984, the petitioners are in effect stating that the escrow payments began in the latter part of October 1983—some four months prior to the show cause order.

**6.** Although Watkins refused to repair the wells prior to the enforcement staff's testing, "[a]fter Staff completed its tests on August 4, 1985, Watkins had work done on the wells and changed the pumping cycle before it performed its own tests." *Stowers Oil & Gas Co.*, 33 FERC ¶ 61,410, at 61,800 (1985) (opinion no. 247).

ing FERC's testing of Watkins' wells pose no procedural bar.

Watkins' contentions, as well as his occasional analogies to "double jeopardy," seem to arise from a basic misconception of the administrative process. Fundamental differences exist between an administrative and a criminal proceeding, and, as the Second Circuit has noted:

> Every person doing business and every investor knows that government agencies conduct investigations for a variety of reasons, and most of them feel the duty to respond to a proper inquiry. As for those whose practices are investigated, it is a necessary hazard of doing business to be the subject of inquiry by a government regulatory agency.

*SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir.1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974).

We find no jurisdictional or procedural grounds for reversing FERC's orders.

### III.

We turn next to our review of FERC's findings of fact and of its decisions. The NGA and NGPA explicitly provide the scope of our review for FERC's findings of fact, stating in identical language that "[t]he finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." 15 U.S.C. § 717r(b) (section 19(b) of the NGA); *id.* § 3416(a)(4) (section 506(a)(4) of the NGPA). Here, furthermore, the Administrative Procedure Act provides an identical standard. *See* 5 U.S.C. § 706(2)(E). Substantial evidence here means "something less than the weight of the evidence," and an agency's finding may meet the standard in spite of "the possibility of drawing two inconsistent conclusions from the evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

Watkins objects that FERC's findings of fact are not based on substantial evidence. His claim is based in part on a contention that evidence was gathered while his wells were in a state of disrepair, and "does not represent the normal producing characteristics of the Watkins wells." At most, the petitioners' contentions amount to conflicts in the evidence. Such conflicts are not enough to overcome the standard for review. After a review of the record as a whole, we conclude that FERC's findings of fact are supported by substantial evidence.

We turn next to our review of FERC's conclusions of law, including its conclusions of state law. "Unlike factual findings, questions of law are freely reviewable by the courts, and courts are under no obligation to defer to the agency's legal conclusions." *Pennzoil Co. v. FERC*, 789 F.2d 1128, 1135 (5th Cir.1986). Generally, however, when a court reviews an agency's careful and studied conclusions of law pertaining to a matter clearly within the agency's expertise, the court will affirm those conclusions if they are reasonable, *cf. Chapman v. United States, Dept. of Health & Human Servs.*, 821 F.2d 523, 527 (10th Cir.1987) (agency's interpretation of statute entrusted to its administration limited to whether construction is "reasonable"), although an agency's "order may not stand if the agency has misconceived the law," *SEC v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).

The petitioners contend that several of FERC's conclusions of law are erroneous. They argue vehemently against FERC's conclusions of state law regarding casinghead gas, gas-oil contacts, proration units, strata, and well pricing classifications. In addition, Watkins argues that even if the gas produced from his oil wells should have been priced under section 104 of the NGPA, 15 U.S.C. § 3314, the section 104 pricing category that applies to Watkins' gas is lower than the section 104 pricing that FERC contends is applicable. Watkins' argument, however, is premised upon the same state law issues that the petitioners raise elsewhere. We have discussed most of those conclusions of state law— some extensively—in *Walker Operating* and find the present issues to be indistin-

guishable.[7] We specifically address here only Watkins' arguments concerning a recent RCT order.

In January 1989 the RCT issued an administrative order concerning regulation of oil and gas production in the Panhandle Field area. *Final Order Adopting and Clarifying Rules and Regulations for the Panhandle Fields,* RCT, Oil & Gas Docket No. 10–87,017 (Jan. 11, 1989).[8] This RCT order established and clarified regulation designed in part to prevent improper production of gas, by oil well operators, from horizons that produce only gas. *See id.* The RCT found that "[o]perators can generally use information" from several sources "in an attempt to determine the gas-oil contact in an individual oil well; but the contact cannot always be determined, and can vary substantially across the field." *Id.* at 4. The RCT therefore concluded that it was best to establish guidelines that would be "offered as 'fingerprints' indicating presumed compliance with field rules which prohibit perforation of oil wells in dry gas horizons." The guidelines would raise "a rebuttable presumption" of such compliance if: (1) the oil well in question met any one of the guidelines; (2) that well met the statutorily permitted ceiling ratio of natural gas produced to oil produced; (3) "there is no evidence of inaccurate reporting of perforations or formation tops and bottoms," *id.* at 17; and (4) "there is no evidence of inaccurate reporting of oil or gas production or test volumes," *id.*

Watkins argues that the Watkins wells Bell Nos. 8 and 9 meet at least one of these RCT guidelines and that they are therefore to be considered in compliance with RCT rules prohibiting perforation of oil wells in horizons producing only gas. We leave to the RCT any determination as to whether Watkins is or is not in compliance with its field rules. We do not find, however, that the RCT final order of January 11, 1989, causes FERC's conclusions of law to be

unreasonable. The RCT guidelines simply lead to the establishment of "rebuttable presumptions" for RCT purposes. FERC need not follow RCT procedures to determine those matters clearly within FERC's jurisdiction, and, moreover, any guidelines for establishing rebuttable presumptions must surely carry even less weight in a context in which, as here, FERC has conducted a full-blown evidentiary hearing. We hold that FERC's conclusions of law are reasonable.

Finally, we note that judicial review of an agency action also entails an examination of the agency's reasoning process. We must determine that the agency's decision was not "arbitrary and capricious," *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *accord Bowman Trans., Inc. v. Arkansas–Best Freight Sys.,* 419 U.S. 281, 284, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974) (noting that "though an agency's finding may be supported by substantial evidence ... it may nonetheless reflect arbitrary and capricious action"). This requires a determination that the choice made by the agency had a rational connection to the facts found and that its decision was based on consideration of the relevant factors. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). Applying this standard to FERC's decisions here, we find it to have been met, and we affirm those decisions upon review.

FERC had jurisdiction to consider those matters examined by it and was under no duty to abstain from that examination. We find no procedural grounds for overturning FERC's orders. FERC's findings of fact are based on substantial evidence, and its conclusions of law are reasonable. FERC's orders are therefore AFFIRMED.

---

**7.** For our discussion of FERC's conclusions of state law regarding these matters, see *Walker Operating,* 874 F.2d at 1332–34.

**8.** An RCT order is not final for administrative purposes until: (1) no motion for rehearing is filed within the period allowed for such mo-

tions; (2) the agency has ruled on submitted motions for rehearing; or (3) any submitted motions for rehearing have been overruled by operation of law. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 16(c), (e) (Vernon Supp.1989).