**KAW VALLEY, INC., Plaintiff,**

v.

**ENVIRONMENTAL PROTECTION AGENCY OF THE UNITED STATES, Defendant.**

**Civ. A. No. 92–2402–GTV.**

United States District Court, D. Kansas.

Feb. 18, 1994.

John C. Tillotson, Murray, Tillotson & Nelson, Chtd., Leavenworth, KS, for plaintiff.

Janice M. Karlin, Office of U.S. Atty., Kansas City, KS, Barbara E Pace, James C Nelson, Patricia A Roberts, U.S. E.P.A., Office of General Counsel, Vicki A O'Meara, Samuel W Plauche, Environmental Defense Section, Environmental & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on the Cross–Motions for Summary Judgment (Docs. 13 and 15) filed by the parties to this action. Additionally, the court has before it plaintiff's Motion for Oral Argument (Doc. 25). Because the court does not believe that oral argument will materially aid in deciding the issues before it, the motion for oral argument

is denied. For the reasons set out in this memorandum and order, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

This case concerns a challenge to the EPA's assessment of civil penalties against plaintiff for the violation of certain reporting requirements of the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11001–11050. The Act requires the owner or operator of a facility subject to its provisions to complete and file a toxic chemical release form providing certain prescribed information regarding the release of listed toxic chemicals. Plaintiff has set forth several theories on which it contends the civil penalties assessed against it should be overturned. First, plaintiff contends that the EPA exceeded its authority in promulgating a regulation defining "full-time employee." Second, plaintiff contends that the EPA failed to comply with the notice requirements of the Administrative Procedures Act [APA] in promulgating the regulation concerning "full-time employee." Finally, plaintiff appeals the civil penalty assessment amount of $12,750.00.

## I. SUMMARY JUDGMENT STANDARDS

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 13396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only be a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## II. STATEMENT OF UNDISPUTED FACTS

The relevant facts are largely undisputed. The facts established by the parties in accordance with D.Kan.Rule 206(c) are as follows:

The EPA brought an enforcement action against Kaw Valley pursuant to section 325 of the Emergency Planning and Community Right-to-Know Act [the Act], 42 U.S.C. § 11045. In that action, the EPA alleged that Kaw Valley committed three violations of section 313 of the Act by failing to file certain "right to know" forms relating to information on chemicals present in the community and released into the environment within 180 days of the due date prescribed by the Act. Section 313 of the Act requires facilities with ten or more full-time employees to file such forms. 42 U.S.C. § 11023. Section 313 subjects facilities with ten or more full-time employees to its filing requirements. *Id.*

The EPA's administrator devised and published final administrative regulations relating to the Act on February 16, 1988. Included in these regulations was a definition of "full-time employee" for purposes of section 313, which defined a full-time employee as a person performing 2,000 hours per year of full-time equivalent employment. 40 CFR § 372.3. Prior to the publication of the final regulations, the EPA published a notice of this rulemaking in 52 Fed.Red. 211552. No specific reference to or definition of the

phrase "full-time employee" appeared in the notice of the proposed regulations.

On December 7, 1987, Kaw Valley's Director of Regulatory Affairs attended a seminar sponsored by the EPA and the State of Kansas with regard to the Act. The proposed regulations relating to the Act had been published at the time of the seminar, and it was stated at the seminar that in order to be subject to the reporting requirements of the Act, a facility must have ten or more full-time employees. Subsequent to the seminar, the February 16, 1988, the final regulations were published and included a definition of the term "full-time employee." Neither the EPA or the State of Kansas contacted seminar participants concerning this post-seminar definition.

Kaw Valley considered itself to have fewer than ten individual full-time employees at all times pertinent to this action. However, when the number of full-time equivalent employees was calculated pursuant to the EPA's February 16, 1988, regulations, Kaw Valley was determined to have fourteen full-time employees and thus to be subject to the Act's reporting requirements. The first reports pursuant to the Act were due on July 1, 1988, but Kaw Valley filed no reports.

On January 10 and 11, 1989, Kaw Valley's facility was inspected by the EPA and, at that time, Kaw Valley was notified that, under the final regulations, it had ten or more full-time employees and was subject to the Act's filing requirements. On June 22, 1989, the EPA still had not received Kaw Valley's reports and instituted an administrative proceeding against Kaw Valley alleging three counts of failure to submit a toxic chemical release form by July 1, 1988, as required by section 313 of the Act. The EPA requested an assessment of civil penalties totalling $15,-000.

Kaw Valley states that it submitted its forms for all three chemicals in question on June 29, 1989. The documents were received by the EPA on or about July 7, 1989. On August 13, 1990, the EPA filed a motion for an accelerated decision as to liability in the administrative proceeding. The Administrative Law Judge [ALJ] ordered that Kaw Valley respond to the EPA's motion by August 27, 1990. Kaw Valley filed no response contesting liability, and on June 7, 1991, the ALJ entered a judgment finding Kaw Valley liable on all three counts of violating the Act's reporting requirements.

A hearing as to the amount of penalties to be assessed was held before the ALJ on October 24, 1991. An attorney representing Kaw Valley attended the hearing. In an initial decision dated September 30, 1992, the ALJ assessed a civil penalty against Kaw Valley in the amount of $12,750. Kaw Valley did not appeal the ALJ's penalty assessment to the Environmental Appeals Board, but instead filed the present action on October 29, 1992.

## III. EPA'S RULEMAKING AUTHORITY

■ In its first contention, plaintiff argues that the EPA's definition of "full-time employee" is outside the scope of its rulemaking authority under the Act. *See* 42 U.S.C. § 11048. Specifically, plaintiff argues that the EPA's definition contradicts Congress's intent and the plain meaning of the phrase "full-time employee." Defendant argues that it acted within its authority to define a statutory term and that its definition is consistent with the purpose of the Act.

In section 328 of the Act, Congress delegated authority to the EPA to prescribe such regulations as may be necessary to carry out the Act. 42 U.S.C. § 11048. Courts have generally held that the validity of a regulation promulgated under such a grant of authority will be sustained if it is reasonably related to the purpose of the enabling legislation. *Mourning v. Family Publication Serv., Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973). However, an agency is not empowered to establish regulations which run far afield from the substance of the Act. *Central Forwarding, Inc. v. Interstate Commerce Comm'n*, 698 F.2d 1266, 1277 (5th Cir.1983). At issue in the present case is the regulation which defines the term "full-time employee" for purposes of compliance with the Act's reporting requirements.

The regulation challenged by plaintiff is set forth at 40 CFR § 372.3:

*Full-time employee* means 2,000 hours per year of full-time equivalent employment. A facility would calculate the number of full-time employees by totalling the hours worked during the calendar years by all employees, including contract employees, and dividing that total by 2,000 hours.

Because the regulation at issue is an agency interpretation of a statutory term, the court will evaluate the definition in accordance with the standards set out by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

In *Chevron,* the Court articulated a two-step analysis to be used in determining whether an agency has exceeded its authority:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 843, 104 S.Ct. at 2782 (footnote omitted); *see Rives v. Interstate Commerce Comm'n,* 934 F.2d 1171, 1174 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1559, 118 L.Ed.2d 207 (1992).

If the agency's construction is based on a permissible construction of the statute, it will be permissible unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* 467 U.S. at 844, 104 S.Ct. at 2782.

Applying the first step of the *Chevron* analysis, the court is satisfied that Congress has not defined the term "full-time employee" in the Act. Moreover, Congress has not unambiguously expressed its intent with regard to the definition of the term. Contrary to plaintiff's contention, the court is not convinced that Congress intended section 313's phrase "ten or more full-time employees" to mean ten or more *individual* full-time employees. "Full-time employee" appears to the court to be a term open to some interpretation.

Therefore, the court will move on to the second prong of the *Chevron* test: whether or not the agency's interpretation of the phrase is a permissible construction of the statute. In applying this prong of the test, the court is governed by the following standard:

Th[e] view of the agency charged with administering the statute is entitled to considerable deference; and to sustain it, we need not find that it is the only permissible construction that [the agency] might have adopted but only that [the agency's] understanding of this very 'complex statute' is a sufficiently rational one to preclude a court from substituting its judgment for that of [the agency].

*Rives,* 934 F.2d at 1175 (quoting *Chemical Mfgrs. Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985)). The EPA asserts that it considered two factors in developing the definition of full-time employee. First, the EPA decided that the definition should apply to the annual basis of reporting so that the standard would apply equitably to businesses with large seasonal variations in employment. 53 Fed.Reg. 4506. Second, the EPA wanted to make sure that businesses with large numbers of contract employees would not be able to avoid the reporting requirements. *Id.*

The court concludes that the EPA's interpretation of the phrase "full-time employee" as set forth in 40 CFR 372.3 is a permissible and rational construction of the statute. Although a more obvious interpretation of the phrase might focus on the number of individual employees working forty hours per week, that does not make the EPA's definition unreasonable. *See Rives,* 934 F.2d at 1175. Two thousand hours is a generally accepted level of annual full-time work, and the EPA's definition allows a facility to make an easy determination of whether it meets a ten employee equivalent level by dividing the total annual hours worked by all employees—including contract employees—by 2,000. *See* 53 Fed.Reg. 4506–07.

## IV. EPA'S COMPLIANCE WITH THE APA'S NOTICE REQUIREMENTS

■ Plaintiff next contends that the EPA failed to comply with the notice requirements of the Administrative Procedures Act [APA] in promulgating its definition of "full-time employee." First, plaintiff argues that there was no solicitation of comments by the agency with respect to the definition of "full-time employee." Second, although plaintiff's brief is somewhat unclear, it appears that plaintiff contends that the EPA failed to rationally and explicitly justify its definition of "full-time employee" by a thorough and comprehensible statement pursuant to section five of the APA. 5 U.S.C. § 553(c).

The EPA has responded by asserting that its rulemaking was procedurally adequate. Defendant contends that its proposed rule-making regarding section 313 of the Act included a detailed description of the statutory reporting scheme and put the public on notice that all requirements described in its proposal were open for comment and clarification, including the regulation subjecting facilities to the Act's reporting requirements based on their number of full-time employees. Defendant asserts that the final rule, which includes the definition of "full-time employee" at issue here, was the outgrowth of the proposed rule and public comments on it. In the alternative, the EPA argues that an agency has the inherent authority to interpret terms in statutes over which it has enforcement authority; such an interpretation is not subject to the notice and comment provisions of the APA.

■ Under either of the two theories set forth by the EPA, the procedure by which the EPA promulgated its definition of "full-time employee" was adequate. Section 553 of the APA requires notice of proposed rule-making, including "either the terms or substance of the proposed rule." 5 U.S.C. § 553(b)(3). Interested parties must be given an opportunity to participate in the rulemaking through submission of written comments. 5 U.S.C. § 553(c). Once a proposal is set forth and the public is given an opportunity for comment, a new opportunity for comment is not required merely because the final rule differs from the proposal. The

Court of Appeals for the Tenth Circuit has stated:

> It is a well settled and sound rule which permits administrative agencies to make changes in the proposed rule after the comment period without a new round of hearings.... To hold otherwise would 'lead to the absurdity that in rule making under the APA the agency can learn from the comments on its proposals only at the peril of starting a new procedural round of commentary.'

*Beirne v. Secretary of Agriculture,* 645 F.2d 862, 865 (10th Cir.1981) (quoting *International Harvester Co. v. Ruckelshaus,* 478 F.2d 615, 632 n. 51 (D.C.Cir.1973)).

Here, the EPA's proposed rule included the requirement in section 313(b)(1)(A) that a facility have ten or more full-time employees to be subject to the reporting requirements. 52 Fed.Reg. 21168. In response to one commenter's request, the final rule set out at 53 Fed.Reg. 4506–07 includes the EPA's definition of full-time employee at issue here. The rule also explains the EPA's reasons for adopting such a definition. Under the standards set out in section 553 of the APA, the EPA gave general notice of a proposed rule, including the terms or substance of the rule or a description of the subjects and issues involved. 5 U.S.C. § 553(b)(3). Moreover, as the Tenth Circuit stated in *Beirne,* an agency may make changes in a proposed rule in response to comments without a new round of hearings. 645 F.2d at 865. Here, the definition of full-time employee was a clarification in response to one commenter and was a logical outgrowth of the original proposed rule. *See American Mining Congress v. Thomas,* 772 F.2d 617, 639 (10th Cir.1985), *cert. denied,* 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 718 (1986). Thus, no new notice or solicitation of comments need be given.

■ Alternatively, the EPA's interpretation of the phrase "full-time employee" might be considered to be within the agency's inherent authority to interpret terms in statutes over which it has enforcement authority. Mere interpretations of language are not subject to either the notice and comment

procedure under 5 U.S.C. § 553 or the formalities of an agency hearing under 5 U.S.C. §§ 556–557. *York v. Secretary of Treasury*, 774 F.2d 417, 420 (10th Cir.1985) (interpretation of statutory term "machine gun" by Bureau of Alcohol, Tobacco and Firearms).

Finally, the court notes that to the extent plaintiff is arguing that the EPA's definition of "full-time employee" is invalid because it did not include a statement of purpose, plaintiff's argument is not adopted. The final rule promulgated by the EPA which defines the term does include a detailed explanation of why the definition was adopted. 53 Fed.Red. 4506–07. Such an explanation satisfies the requirement in 5 U.S.C. § 553(c) that a concise statement of basis and purpose be included in all final rules.

## V. APPEAL OF THE CIVIL PENALTY

█ In Count II of its complaint and in its motion for summary judgment, Kaw Valley contends that the civil penalty of $12,750 fixed by the ALJ should be reduced to $1,500. Plaintiff asserts that a lower penalty would be appropriate in light of the ALJ's findings that the seminar attended by plaintiff's Director of Regulatory Affairs was inadequate, that the EPA would not have been burdened by notifying seminar participants of the definition of "full-time employee," and that Kaw Valley's failure to file was the result of a misunderstanding. Plaintiff further argues that $1,500 would be the equivalent of a penalty for late reporting of 180 days.[1] In response, the EPA argues that Count II should be dismissed because plaintiff failed to exhaust its administrative remedies under the Act before filing this lawsuit. In its reply, Kaw Valley contends that the EPA has waived any defense based on failure to exhaust by neglecting to plead it as an affirmative defense in its answer. The EPA in turn asserts that it has not waived the defense, or in the alternative, should be allowed to amend its answer to assert it. Finally, the EPA asserts that it did not abuse its discretion in assessing a penalty of $12,-750 for plaintiff's failure to comply with the

Act's reporting requirements and that the penalty amount should be affirmed.

The court notes but does not decide the parties' arguments concerning exhaustion of administrative remedies and waiver of an affirmative defense because the court concludes that there is no basis for overturning the ALJ's civil penalty assessment in this case on its merits. "[O]nce an agency determines that a violation has been committed, the sanctions to be imposed are a matter of agency policy and discretion." *Robinson v. United States*, 718 F.2d 336, 339 (10th Cir. 1983). The Tenth Circuit has clearly stated that "[i]n reviewing an agency's imposition of a sanction within limits specified by a statute, we will not overturn an agency's choice of sanctions unless we find that those sanctions are unwarranted in law or without justification in fact." *Chapman v. Department of Health and Human Servs.*, 821 F.2d 523, 529 (10th Cir.1987) (citing *Butz v. Glover Livestock Comm'n*, 411 U.S. 182, 185, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142, *reh'g denied*, 412 U.S. 933, 93 S.Ct. 2746, 37 L.Ed.2d 162 (1973)).

In the present case, plaintiff's argument that the civil penalty imposed is excessive is based upon the following factors: (1) the seminar attended by plaintiff's Director of Regulatory Affairs was inadequate, (2) the EPA would not have been burdened by notifying seminar participants of the new regulation defining full-time employee, and (3) that plaintiff's failure to comply with the Act's reporting requirements was a result of a misunderstanding. The Administrative Record indicates that the ALJ considered these factors, as well as the fact that even though plaintiff was informed by the EPA that it was covered by the reporting requirements on January 10, 1989, the EPA did not receive plaintiff's reports until July, 1989. The ALJ specifically found that plaintiff's lack of diligence weighed against a significant reduction of the penalty.

In light of the ALJ's weighing of both aggravating and mitigating factors, the court concludes that the penalty assessment cannot

---

1. Plaintiff is apparently arguing that it would be equitable to penalize it only for the 180-day lag time between the time it was notified by the EPA that it was subject to the Act's reporting requirements in January, 1989, and when it actually filed its reports in July, 1989.

be considered an abuse of discretion. *See Chapman*, 821 F.2d at 529. The penalty assessed was well under the statutory maximum of $75,000 and was in fact even lower than the $15,000 penalty requested by the government. Accordingly, the court finds no basis for overturning the ALJ's penalty assessment in this case.

IT IS, THEREFORE, BY THE COURT ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 13) is denied.

IT IS FURTHER ORDERED that Defendant's Cross–Motion for Summary Judgment (Doc. 15) is granted. The case is dismissed.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**