UNITED STATES of America, Plaintiff,

v.

CHARLES GEORGE TRUCKING COMPANY, INC., et al., Defendants.

Civ. A. No. 85–2463–G.

United States District Court, D. Massachusetts.

Aug. 15, 1986.

---

Andrew E. Lauterback, Asst. U.S. Atty., Joseph J. McGovern, Environmental Enforcement Section, U.S. Dept. of Justice, Washington, D.C., for the U.S.

Anne Rogers, Margaret E. Sheehan, Asst. Atty. Gen., Environmental Protection Div., Boston, Mass., for Com. of Mass.

Richard L. Fox, Carragher, Fox and Lampert, Chelmsford, Mass., for Ernest G. Dixon, Jr.

William F. Macauley, Craig and Macauley, Boston, Mass., for defendants.

Bruce F. Smith, Boston, Mass., for Charles George Sr. and Charles George Trucking Co.

Richard E. Bachman, Hale, Sanderson, Byrnes & Morto, Boston, Mass., for Dorothy George and Dorothy Lacerte.

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT IN PART

GARRITY, District Judge.

This action is brought by the United States on behalf of the Environmental Protection Agency ("EPA") in connection with the EPA's efforts to respond to the release or threatened release of hazardous substances into the environment from the Charles George landfill. The government seeks relief from the Charles George Land Reclamation Trust ("the Trust"), which holds title to the landfill, the Charles George Trucking Company ("the trucking company"), which transported hazardous waste to the landfill, and members of the George family in connection with their operation of the landfill and the trucking company. On January 14, 1986, 624 F.Supp. 1185, the court granted a substantial portion of the government's motion for partial summary judgment against the George parents, Charles George, Sr. and Dorothy George, with respect to its claim seeking an injunction ordering the defendants to answer EPA information requests and the imposition of civil penalties for their previous failure to do so. The government now seeks summary judgment on this claim against the three George children, James George, Charles George, Jr. and Karen Karras.[1]

*Facts*

The following facts are undisputed. On January 18, 1985, the Director of the Waste Management Division in EPA's Boston office sent a letter requesting information about the landfill and the trucking company to each of the George children. The letter was received on February 1, 1985 by Karen Karras, on February 6, 1985 by James George, and on February 8, 1985 by

---

**1.** The government's complaint also contains three other claims for relief seeking, *inter alia,* the costs incurred by the EPA in responding to the release of hazardous substances at the landfill. These claims for relief are not addressed by the instant motion.

Charles George, Jr. It informed the defendants of the statutory authority upon which the requests were based and that a failure to furnish the information within thirty days without adequate justification could result in the EPA bringing an enforcement action seeking the imposition of civil penalties of up to $25,000 per day for non-compliance.

On March 6, 1985, after the thirty-day period had expired for Karen Karras but before the thirty days had expired for James and Charles George, Jr., counsel for the entire George family, Anton T. Moehrke, Esquire, responded to the EPA, acknowledging receipt of the EPA's letter and seeking a sixty-day extension of the time in which to furnish the information requested. The EPA denied this request for extension in an April 3, 1985 letter. The letter reiterated that the EPA might choose to enforce its information request and seek civil penalties for each day of non-compliance. It further noted that the accrual of such penalties began on March 3, 1985 for James George and on March 10, 1985 for Charles George, Jr. Attorney Moehrke responded to this denial of an extension in an April 9, 1985 letter, which requested an explanation of the basis upon which the deadlines were established and information concerning potential avenues of administrative appeal of the denial of extension. Moehrke also advised EPA that he expected to furnish a response by May 5, 1985. No responses were filed by that date. The government instituted this action on June 13, 1985. On August 12, 1985, the George children furnished responses to the EPA's information requests.

*Issues*

The government contends that the defendants violated both the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42

U.S.C. § 9601 *et seq.* by failing to respond within the thirty days provided for by EPA. Both statutes require that individuals who have handled hazardous wastes provide information relating to those wastes upon the request of a duly designated representative of the EPA. See RCRA, 42 U.S.C. § 6927(a) and CERCLA, 42 U.S.C. § 9604(e)(1). In addition, RCRA provides that any person who violates one of the requirements of its Subchapter III, 42 U.S.C. §§ 6921–6934, is liable to the United States for a civil penalty of up to $25,000 per day for each violation. 42 U.S.C. § 6928(g).

The defendants oppose the government's motion for partial summary judgment on several grounds. First, they argue that the EPA requests were issued solely pursuant to CERCLA not RCRA, and therefore, the RCRA penalty provisions are inapplicable. Furthermore, defendants contend that summary judgment is inappropriate because the RCRA penalty is criminal in nature. The defendants also maintain that the statutory scheme whereby a penalty may be imposed for their failure to respond is constitutionally defective because it unduly burdens their Fifth Amendment privilege against self-incrimination and deprives them of liberty and property without due process of law. Finally, the defendants oppose summary judgment on the ground that a genuine issue of fact exists as to whether Karen Karras handled hazardous waste within the meaning of RCRA or CERCLA.

## A. Statutory Authorization

The defendants concede that some [2] of EPA's information requests are authorized by CERCLA, 42 U.S.C. § 9604(e)(1), but they argue that they are not subject to the RCRA penalty provision, 42 U.S.C. § 6928(g) because none of these requests are authorized by RCRA, 42

---

**2.** In its January 14, 1986 order granting the government's motion for partial summary judgment against the George parents, the court found that seven of EPA's 26 requests for information (requests 15, 17, 20, 21, 22, 23, and 24)

were authorized neither by CERCLA nor RCRA and that two requests (requests 25 and 26) should be limited to certain documents. Those holdings are equally applicable to the George children.

U.S.C. § 6927(a). We disagree. RCRA provides,

> For purposes of developing or assisting in the development of any regulation or enforcing the provisions of [RCRA], any person who generates, stores, treats, transports, disposes of or otherwise handles hazardous wastes shall, upon request of any officer, employee or representative of the Environmental Protection Agency, duly designated by the Administrator ... furnish information relating to such wastes ...

42 U.S.C. § 6927(a). Here, the EPA seeks information concerning the nature of the chemical substances handled at the landfill and the manner in which those substances were handled. Not only could such information assist the EPA in developing and revising regulations concerning standards applicable to the transportation, storage, treatment and disposal of hazardous waste, a function delegated to the EPA under RCRA, see 42 U.S.C. §§ 6923, 6924, responses to EPA's requests could also facilitate enforcement of other RCRA provisions. See, e.g., 42 U.S.C. §§ 6934, 6973(a). The defendants' argument that RCRA does not apply to inactive sites like the Charles George landfill is unpersuasive. For example, the provision in RCRA which authorizes the EPA to order the owner of a hazardous waste disposal site to conduct testing on that site, specifically discusses its applicability to inactive sites. See 42 U.S.C. § 6934(b). See also *United States v. Waste Industries, Inc.*, 4 Cir.1984, 734 F.2d 159, 165 (holding that RCRA enforcement provision, 42 U.S.C. § 6973, is not limited to active conduct: "Without a means to respond to disasters precipitated by earlier poor planning, our nation's resources could be 'conserved' from further harm, as the title of the Resource Conservation and Recovery Act suggests, but never 'recovered' to their former wholesome condition.") Accordingly, the court finds that the EPA requests presently at issue [3] were authorized by both CERCLA and RCRA and that the defendants' failure to respond subjects them to liability pursuant to the RCRA civil penalty provision.

**B. Nature of RCRA Penalty**

■ The defendants contend that the RCRA civil penalty is criminal in nature, and therefore the court cannot grant the government's motion for summary judgment because the defendants are entitled to a jury trial and other criminal procedural guarantees afforded by the United States Constitution. Again, we disagree. Whether a statutorily defined penalty is civil or criminal is a matter of statutory construction. *United States v. Ward*, 1980, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742. With reference to the penalty at issue here, Congress clearly intended that § 6928(g) serve as a civil sanction. Congress expressly labelled the penalty provided for by this subsection as civil. Moreover, the juxtaposition of § 6928(g) to RCRA provisions providing for criminal penalties, see 42 U.S.C. § 6928(d), (e), further demonstrates congressional intent to establish § 6928(g) as an alternative to the imposition of criminal sanctions.

■ In light of this intent, a determination that the § 6928(g) penalty is nevertheless criminal would be warranted only if "the statutory scheme [is] so punitive either in purpose or effect as to negate that intention." Id. at 248–49, 100 S.Ct. at 2641. In this regard, the defendants contend that the potentially exorbitant fines to which they might be subject demonstrates the punitive nature of the penalty. This factor alone, however, is insufficient to transform the civil remedy intended by Congress into a criminal penalty. See *United States v. J.B. Williams Co.*, 2 Cir.1974, 498 F.2d 414, 421 ("When Congress has characterized the remedy as civil and the only consequence of a judgment for the Government is a money penalty, the courts have taken Congress at its word.") Indeed, "monetary assessments are traditionally a form of civil remedy," *United States v. Ward, supra*, 448 U.S. at 256, 100 S.Ct. at 2645 (Blackmun, J. concurring). Furthermore the fact

---

**3.** See note 2.

that the imposition of the § 6928(g) penalty does not require a finding of scienter, cf. 42 U.S.C. § 6928(d), (e), and that § 6928(g) imposes no affirmative restraint on the defendants are factors, see *Kennedy v. Mendoza-Martinez,* 1963, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644, leading the court to conclude that § 6928(g) is essentially regulatory, seeking to enhance compliance with RCRA rather than impose penal sanctions on those who violate the statute.

## C. Fifth Amendment Issues

### 1. Privilege against self-incrimination

The defendants argue that they were not required to answer the EPA's information requests because of the privilege against self-incrimination afforded to them by the Fifth Amendment of the Constitution of the United States, and consequently, that they did not violate RCRA's § 6927(a) by failing to respond as directed. However, the privilege against self-incrimination "is not a self-executing mechanism; it can be affirmatively waived, or lost by not asserting it in a timely fashion." *Maness v. Meyers,* 1975, 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574. Here, the EPA provided the defendants with thirty days in which to respond or adequately justify their failure to respond. If the defendants had a reasonable apprehension that by answering the EPA's questions they could incriminate themselves, they could have raised their Fifth Amendment

privilege within the thirty days prior to any liability attaching. Having failed to invoke the privilege, the defendants waived that protection and cannot now invoke it as justification for their violation of § 6927(a) of RCRA. See *Rogers v. United States,* 1951, 340 U.S. 367, 371, 71 S.Ct. 438, 440, 95 L.Ed. 344 (rejecting defendant's claim of privilege as "pure afterthought").

### 2. Due process rights

The defendants also argue that this statutory scheme violates their due process rights under the Fifth Amendment because they cannot challenge the validity of the EPA's requests without risking the accrual of potentially substantial fines and therefore, they have been deprived of liberty and property interests without a meaningful opportunity to be heard. They contend that the imposition of a civil penalty would be constitutionally sound only if they were first afforded the opportunity to avoid such a penalty by establishing that they had a good faith defense for their failure to respond to the EPA. However, EPA did afford them such an opportunity: the EPA letter gave them the option of responding or adequately justifying their failure to respond within thirty days. The defendants had the opportunity to raise their challenges to the EPA requests prior to any liability attaching but failed to do so.[4] Having failed to take advantage of this opportunity, the defendants cannot now argue that the process afforded to them was inadequate.[5]

---

**4.** This is a somewhat closer case than that presented by the George parents since both James George and Charles George, Jr. requested extensions of time prior to the expiration of the thirty-day period. However, this request for an extension was not a challenge to the validity of the EPA's requests and would not be a defense to the violation of § 6927(a). The reasonableness of the time afforded to the defendants is a factor to be considered in assessing the penalty.

**5.** Had the EPA instituted an enforcement action after defendants had raised good faith challenges to the EPA's requests in a timely manner, the imposition of an accrued penalty would be more troublesome, see *Reisman v. Caplin,* 1964, 375 U.S. 440, 447, 84 S.Ct. 508, 512, 11 L.Ed.2d 459 (due process satisfied if noncompliance

with summons subjects defendant to prosecution only if he fails to appear and interpose good faith defenses), but those facts are not presented by this case. Furthermore, under the multi-factored due process analysis of *Mathews v. Eldridge,* 1976, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, the process afforded to the defendants would appear to pass constitutional muster inasmuch as the private interest, freedom from having to provide the EPA with information and documents, cf. *Woodland Private Study Group v. State of New Jersey,* D.N.J.1985, 616 F.Supp. 794, is substantially outweighed by the government interest in controlling promptly and efficiently the release of hazardous waste. Furthermore, the risk of erroneous deprivation posed by the coercive effect of the accrual of fines is ameliorated by the fact that the defend-

**D. Karen Karras**

Finally, the defendants contend that Karen Karras is not a handler of hazardous waste within the meaning of CERCLA and RCRA. Upon review of the evidence submitted both in support and in opposition to summary judgment, we find there exists a genuine issue of material fact with regard to Karras's role in the operation of the landfill and the trucking company. For example, while the government has submitted exhibits indicating that Karras served the trucking company in a managerial capacity, her deposition indicates that she performed an essentially clerical function in the operation of the business. In light of this factual dispute, summary judgment with respect to the government's claim against her would be unwarranted. See Rule 56, Fed.R.Civ.P.

Accordingly, the government's motion for partial summary judgment is granted with respect to James George and Charles George, Jr. but denied with respect to Karen Karras.

ants are not compelled to answer nor is any fine imposed except by court order. See *United States v. Tivian Laboratories, Inc.,* 1 Cir.1978, 589 F.2d 49, 54, cf. *Oklahoma Operating Co. v.* *Love,* 1920, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596 (where judicial review of a state agency's order was available only after penalty had been imposed).