Norman Eugene DUNCAN, Plaintiff,

v.

Gale A. NORTON, Attorney General for the State of Colorado, and Diana R. Maurer Schatz, Assistant Attorney General for the State of Colorado, in their official capacities only. Defendants.

Civil Action No. 96–WY–2653–CB.

United States District Court,
D. Colorado.

June 20, 1997.

Michael W. Gross, Arthur M. Schwartz, Gary Michael Kramer, Arthur M. Schwartz, P.C., Denver, CO, for Plaintiff.

Jan M. Zavislan, Attorney Gen. Office, Denver, CO, for Defendant.

### ORDER ADOPTING MAGISTRATE'S RECOMMENDATION DISMISSING PLAINTIFF'S COMPLAINT

BRIMMER, District Judge.

This matter comes before the Court upon Defendants' motion to dismiss and Plaintiff's cross-motion for summary judgment. On April 1, 1997, United States Magistrate Judge Patricia A. Coan entered the Recommendation of United States Magistrate Judge recommending that Defendants' motion to dismiss should be granted in part and denied in part, Plaintiff's cross-motion for summary judgment should be denied, and Plaintiff's Complaint should be dismissed without prejudice.

The Court, having reviewed the materials on file and being fully advised in the premises, now **ADOPTS** Magistrate Coan's Recommendation. For the reasons stated in the Recommendation, the Court **ORDERS** that Defendants' motion to dismiss is **GRANTED**

**IN PART** and **DENIED IN PART,** Plaintiff's motion for summary judgment is **DENIED,** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE.**

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

This matter is before the court on Defendants' Motion to Dismiss and Plaintiffs Cross–Motion for Summary Judgment. Orders of reference under 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72 referred this case to the undersigned magistrate judge on February 4, 1997 and March 5, 1997 to issue recommendations on the motions. The court heard oral argument on March 10, 1997. For the reasons discussed below, it is recommended that plaintiffs motion be denied and that defendants' motion be granted in part and denied in part.

### I.

Unless stated otherwise, the following relevant facts were stipulated to in the January 17, 1997 case management order.

The Colorado Attorney general is charged with enforcing the provisions of the Colorado Consumer Protection Act, 6–1–101, C.R.S., *et seq.* (1992 Repl. Vol.)("CCPA"). Under § 6–1–108, C.R.S., the Attorney General is empowered to issue subpoenas to require the attendance of witnesses or the production of documents, and to conduct hearings relating to investigations under the CCPA. The CCPA provides a grant of use immunity to individuals who are compelled to testify by subpoena. § 6–1–111(1), C.R.S.

Defendants allege that since the spring of 1996, the Attorney General's office has been conducting an ongoing investigation into a series of pyramid schemes promoted throughout the Colorado Front Range. Motion to Dismiss, p. 2, ¶ 3. During the course of their investigation, defendants obtained information which led them to believe that plaintiff might have been involved in promoting a pyramid scheme. *Id.,* p. 2, ¶ 4.

On or about October 11, 1996, plaintiff was served with a subpoena from defendant Schatz compelling him to produce requested documents and to testify under oath about his involvement with a group known as the "Networking Club" or "Friends Helping Friends." Plaintiff complied with the subpoena and testified under oath on October 25, 1996 about activities relating to the Networking Club. Before plaintiff was placed under oath, defendant Schatz advised him that the information he provided pursuant to the subpoena could not be used against him in a criminal prosecution, but could be used against him in a civil enforcement action.

Plaintiff thereafter received a letter from defendant Schatz, dated November 4, 1996, along with an enclosed draft complaint and a proposed "Stipulated Final Judgment and Permanent Injunction." The letter apprised plaintiff that if he did not execute the stipulated final judgment on or before November 18, 1996, the Colorado Attorney General's office would file a civil enforcement action against him in state court. Plaintiff did not execute the stipulated final judgment.

Plaintiff filed the instant 42 U.S.C. § 1983 action on November 15, 1996, seeking an injunction against defendants to prevent them from using his prior compelled testimony under the investigatory subpoena to obtain § 6–1–112(1) penalties against him in a subsequent civil enforcement action, on the grounds that such action by the defendants would deprive him of his Fifth, Sixth, Ninth and Fourteenth Amendment rights under the United States Constitution. Plaintiffs original complaint also sought a declaration that § 112(1) of the CCPA, as applied to him, is unconstitutional, and requested an award of damages.[1]

---

1. Plaintiff filed an amended complaint for Declaratory Relief, Preliminary Injunction, Permanent Injunction and Attorney Fees on February 25, 1997 which contains the same allegations as his original complaint, but does not include a claim for violation of his Sixth Amendment rights, or a prayer for damages. Because Plaintiff did not seek leave of court prior to filing his amended complaint, as required by Fed.R.Civ.P.

15(a), on March 31, 1997, the court ordered that the amended complaint be stricken.

Notwithstanding that order, plaintiff has withdrawn his § 1983 claim for violation of his Sixth Amendment right to counsel and his claim for damages against defendants. See Plaintiffs Response to Motion to Dismiss and Cross Motion for Summary Judgment, p. 25, n. 6. In addition, plaintiff withdrew his § 1983 claim based on

The Colorado Attorney General filed a complaint against plaintiff in Adams County District Court, Case No. 96–CV–2326: *State ex rel. Norton v. Duncan,* on December 12, 1996, seeking, among other remedies, civil penalties against Mr. Duncan, under § 6–1–112(1), C.R.S., for violations of the CCPA. Mr. Duncan filed an answer to that complaint on January 31, 1997 in which he stated, as an affirmative defense, that the action violated his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

## II.

Summary judgment is proper under Fed. R.Civ.P. 56(c) where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

There are no genuine issues of material fact in dispute. The dispositive motions concern a question of law: whether defendants' action in seeking civil monetary penalties against plaintiff in the pending state CCPA enforcement proceeding violates his Fifth Amendment privilege against self-incrimination.

## III.

Defendants have moved to dismiss plaintiffs complaint on the ground that § 112(1) of the CCPA permits a civil sanction to be assessed against a defendant in a civil enforcement proceeding; therefore, because the penalty at issue is civil, rather than criminal, neither the statutory use immunity afforded to plaintiff, nor his Constitutional rights, have been violated by the use of his prior compelled testimony in the state action. Defendants argue in the alternative that the court should abstain from accepting jurisdiction of the instant action, under *Pullman* [2] or *Younger* [3] abstention principles, because the

same issues are the subject of related actions which are currently pending in state court.

Plaintiff has moved for summary judgment on the ground that defendants cannot lawfully seek § 112(1) penalties against him in the civil enforcement proceeding because the penalties sought are actually criminal, rather than civil in nature; therefore, seeking such penalties through the use of plaintiffs prior compelled testimony would violate the § 111(1) use immunity provision under which plaintiff testified in the investigatory proceeding. Plaintiff also argues that defendants' use of his prior immunized testimony violates his Fifth Amendment privilege against self-incrimination because defendants did not advise him, in the investigatory hearing, that he could refuse to testify.

§ 6–1–111 (1) of the CCPA states:

Any testimony obtained by the attorney general or a district attorney pursuant to compulsory process under this article [§ 6–1–108] or any information derived directly or indirectly from such testimony shall not be admissible in evidence in any criminal prosecution against the person so compelled to testify. The provisions of this subsection (1) shall not be construed to prevent any law enforcement officer from independently producing or obtaining the same or similar facts, information, or evidence for use in any criminal prosecution.

§ 6–1–112(1) provides:

Any person who violates or causes another to violate any provision of this article shall forfeit and pay to the general fund of this state a civil penalty of not more than two thousand dollars for each such violation. For purposes of this subsection (1), a violation of any provision shall constitute a separate violation with respect to each consumer or transaction involved; except that the maximum civil penalty shall not exceed one hundred thousand dollars for any related series of violations.

defendants' alleged violation of his thus far unspecified Ninth Amendment right at the March 10, 1997 hearing.

**2.** *Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**3.** *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

In addition, the attorney general may recover costs and attorney fees in any civil enforcement action when the attorney general successfully enforces the provisions of the CCPA. § 6-1-113, C.R.S.

### A.

■ The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment privilege against self-incrimination may be invoked not only when an individual is a defendant in a criminal trial, but also in any civil or criminal proceeding where his answers to questions might incriminate him in a future criminal proceeding. *Allen v. Illinois,* 478 U.S. 364, 368, 106 S.Ct. 2988, 2991–92, 92 L.Ed.2d 296 (1986)(quotations and citations omitted).

■ A state may properly compel testimony under a statutory grant of immunity which grants protection against self-incrimination which is "coextensive" with the protection provided by the Fifth Amendment, i.e., a statutory provision which precludes the use of state-compelled testimony in a later criminal prosecution against the witness. *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). Thus, plaintiffs Fifth Amendment privilege against self-incrimination is violated if, during the state civil enforcement proceeding, the Attorney General's office uses plaintiffs previously compelled testimony to impose civil penalties against him which are more properly characterized as "criminal" penalties. *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980); *Allen,* 478 U.S. at 368–69, 106 S.Ct. at 2991–92. Conversely, the privilege is not implicated by the assessment of a penalty which is non criminal in nature. *United States v. Apfelbaum,* 445 U.S. 115, 124, 100 S.Ct. 948, 953–54, 63 L.Ed.2d 250 (1980).

There is no dispute that the testimony which plaintiff was compelled to give in the state investigatory proceeding is the basis for the CCPA civil enforcement action pending against plaintiff in state court. However, defendants' use of that testimony to seek

restitution on behalf of injured consumers, or to obtain attorney's fees and costs incurred in the enforcement proceeding, unquestionably does not implicate plaintiffs Fifth Amendment privilege against self-incrimination. The pertinent question is whether defendants should be precluded from seeking § 112(1) penalties against plaintiff in the state proceeding because those penalties can be properly construed as criminal penalties.

### B.

■ Whether a statutory penalty is civil or criminal is a matter of statutory construction which involves a two-part inquiry: (1) whether the legislature, in establishing the penalty, indicated either expressly or impliedly a preference for one label or the other; (2) if the legislature has indicated its intention to establish a civil penalty, whether the statutory scheme "is so punitive either in purpose or effect as to negate that intention." *Ward,* 448 U.S. at 248–49, 100 S.Ct. at 2641. Under the second inquiry, a person must establish the unconstitutionality of a statute on that ground by "the clearest proof." *Id.* at 249, 100 S.Ct. at 2641–42.[4]

Here, the Colorado general assembly expressly stated its intent that penalties imposed under § 6-1-112(1) are civil in nature. Moreover, the fact that the legislature provided that civil enforcement proceedings are to be governed by the Colorado Rules of Civil Procedure reinforces the legislature's intent to create a civil penalty. *Helvering v. Mitchell,* 303 U.S. 391, 402, 58 S.Ct. 630, 634–35, 82 L.Ed. 917 (1938). Accordingly, the operative inquiry is whether the penalties provided for are so punitive in nature as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Id.* at 249, 100 S.Ct. at 2641–42, quoting *Rex Trailer Co. v. United States,* 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956).

The *Ward* "clear proof" standard is difficult and has not been met in several federal circuits where an individual has challenged the assessment of a statutory "civil" penalty as being unconstitutional. *See United States*

---

4. *In Ward,* the court determined that the monetary penalty imposed under the Federal Water Pollution Control Act ("FWPCA") was intended by Congress to be a civil penalty and that defendant had provided no clear proof to show that the penalty operated as a criminal sanction.

*v. Charles George Trucking Co., Inc.,* 642 F.Supp. 329, 333 (D.Mass.1986)(analyzing civil penalties authorized under Resource Conservation and Recovery Act); *DeMartino v. Commissioner of Internal Revenue,* 862 F.2d 400, 409 (2nd Cir.1988)(analyzing income tax penalties imposed by Internal Revenue Service); *O'Neill v. City of Philadelphia,* 817 F.Supp. 558, 564–65 (E.D.Pa.1993)(analyzing parking violation fines assessed by city under city ordinance); *United States v. J & T Coal, Inc.,* 818 F.Supp. 925, 926–28 (W.D.Va.1993)(analyzing civil penalty provisions authorized under Federal Mine Safety and Health Act); *Atlas Roofing Co. v. Occupational Safety and Health Review Commission,* 518 F.2d 990 (5th Cir.1975), *affd. on other grounds,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977)(analyzing civil penalties authorized under Occupational Safety and Health Act);[5] *Gardner v. City of Columbus,* 841 F.2d 1272, 1276–78 (6th Cir.1988)(analyzing parking violation fines assessed by city under city ordinance); *Van Harken v. City of Chicago,* 906 F.Supp. 1182, 1190–92 (N.D.Ill. 1995), *aff'd, as modified, on other grounds,* 103 F.3d 1346 (7th Cir.1997) (analyzing parking violation fines assessed by city under city ordinance); *Scott v. Bowen,* 845 F.2d 856 (9th Cir.1988), *Chapman v. United States,* 821 F.2d 523, 529 (10th Cir.1987), and *Mayers v. U.S. Dept. of Health & Human Services,* 806 F.2d 995, 998–99 (11th Cir.1986)(analyzing Social Security Act provisions permitting assessment of civil penalties for submission of false Medicaid claims).

Constitutional challenges to state statutory civil penalty provisions have similarly failed. *See, for example, People ex rel. v. Walsh,* 122 Ill.App.3d 481, 77 Ill.Dec. 691, 461 N.E.2d 78, 83–84 (1984) (challenge to civil penalties imposed under state Consumer Fraud and Deceptive Business Practices Act); *Harvey–Cook v. Steel,* 124 A.D.2d 709, 508 N.Y.S.2d 220, 221–22 (1986) (challenge to civil penal-

ties imposed under state Social Services Law); *Kimmelman v. Henkels, McCoy, Inc.,* 108 N.J. 123, 527 A.2d 1368, 1372–73 (1987)(challenge to civil penalties imposed under state Antitrust Act); *State v. Alpine Air Products, Inc.,* 500 N.W.2d 788, 792–93 (Minn.1993)(challenge to civil penalties imposed under state consumer protection and antitrust statutes); *State ex rel. Celebrezze v. Hughes,* 58 Ohio St.3d 273, 275–78, 569 N.E.2d 1059, 1062–64 (1991)(challenge to civil penalties imposed under state Consumer Sales and Practices Act and Odometer Rollback and Disclosure Act); *State v. Western Capital Corporation,* 290 N.W.2d 467, 471–73 (S.D.1980)(challenge to civil penalties imposed under state Deceptive Trade Practices and Consumer Protection Law).

The following seven factors set forth in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963),[6] although neither exhaustive nor dispositive, provide some guidance for assessing whether the civil penalties in § 6–1–112(1) of the CCPA are criminal in nature:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

*See Ward,* 448 U.S. at 249–50, 100 S.Ct. at 2641–42; *Roach v. National Transportation Safety Board,* 804 F.2d 1147, 1153 (10th Cir. 1986).[7]

The first and third *Mendoza–Martinez* factors weigh in plaintiff's favor. Without ques-

---

**5.** Although *Atlas Roofing Co.* is a pre-Ward case, the Fifth Circuit Court of Appeals analyzed the purposes served by the civil penalty provisions of OSHA and determined that the statute's remedial purpose supported the legislature's intent to create a civil penalty. *Atlas Roofing Co.,* 518 F.2d at 1010–11.

**6.** *Kennedy v. Mendoza–Martinez* concerned a constitutional challenge to federal statutes requiring

forfeiture of American citizenship as a civil sanction for draft evasion.

**7.** In *Roach,* the court applied the *Mendoza–Martinez* factors and found no clear proof, under *Ward,* that suspension or revocation of an airman's certificate for violation of FAA safety regulations operated as a criminal sanction.

tion, the penalties imposed by § 112(1) are unconditional and therefore constitute an affirmative disability. Further, although the imposition of civil penalties under § 112(1) is not contingent upon a finding of intent, neither is the imposition of criminal penalties under § 114. The second factor, however, clearly weighs in favor of the Colorado General Assembly's intent to create a civil penalty in § 112(1). Monetary penalties have traditionally been regarded as a form of civil remedy, rather than punishment. *Ward*, 448 U.S. at 256, 100 S.Ct. at 2645 (Blackmun, J., concurring); *Helvering*, 303 U.S. at 399, 58 S.Ct. at 633.

■ Under the fifth *Mendoza–Martinez* factor, § 114 of the CCPA provides that a person who is convicted of promoting a pyramid promotional scheme may be guilty of a criminal misdemeanor or felony; thus, the behavior subject to § 112(1) penalties may also constitute a crime under § 114.% However, the law is well-settled that a legislature may properly impose both a criminal and civil sanction for the same act. *Helvering*, 303 U.S. at 399, 58 S.Ct. at 633; *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972). The fact that the legislature provides for a civil penalty in one section of a statutory scheme and for criminal penalties in another section dilutes the force of the fifth *Mendoza–Martinez* factor. *Ward*, 448 U.S. at 250, 100 S.Ct. at 2642, citing *Helvering*, 303 U.S. at 404, 58 S.Ct. at 635–36.

The fourth, six and seventh *Mendoza–Martinez* factors pertain to the purpose(s) served by the civil sanction. It is undisputed that penalties imposed under § 112(1) promote retribution and deterrence. However, in *United States v. Halper*, 490 U.S. 435, 446, 109 S.Ct. 1892, 1900–01, 104 L.Ed.2d 487 (1989), the Supreme Court made clear that the fact that a civil sanction serves a punitive purpose does not automatically transform the sanction into a criminal punishment for purposes of the Double Jeopardy Clause. Although *Halper* involved the Double Jeopardy Clause's prohibition against governmental attempts to criminally punish an individual twice for the same offense, the Supreme Court's analysis of "whether and under what circumstances a civil penalty may constitute

criminal punishment", *id.* at 446, 109 S.Ct. at 1900, is instructive in determining whether a penalty is civil or criminal in nature for purposes of the Fifth Amendment privilege against self-incrimination.

*Halper* involved a proceeding instituted by the federal government under the civil False Claims Act, 31 U.S.C. § 3729, *et. seq.*, (1982)("FCA"). The FCA, at § 3729, authorized the assessment of a civil penalty of $2,000 for each proven violation, recovery of double damages, and recovery of the government's costs incurred in prosecution and investigation of the action. The government's actual damages totaled $585.00. Defendant was found liable for an additional $130,000 in civil penalties, plus the amount of the government's costs, which the district court had estimated at $16,000. *Halper*, 490 U.S. at 438–439, 109 S.Ct. at 1896–97.

The *Halper* court initially analyzed the facts and legal principles set forth in *Helvering*, *Rex Trailer Co.*, and *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), and concluded that those cases stand for the proposition that the government is entitled to "rough remedial justice", i.e., that it may demand compensation according to imprecise formulas, such as liquidated damages, without being deemed to have imposed a criminal punishment. *Halper*, 490 U.S. at 446, 109 S.Ct. at 1900–01. The specific question before the *Halper* court was at what point, if any, does the imposition of statutory monetary penalties cross the line from "rough remedial justice" to "clear injustice," and therefore constitute a second criminal punishment. *Id.*

The court noted that because civil proceedings may properly advance both punitive and remedial goals, the primary purposes served by the sanctions were critical to the determination of whether a "civil" penalty in fact constitutes a criminal punishment. *Id.* at 449, 109 S.Ct. at 1902. To that end, a penalty which may only be characterized as punitive in nature, with no corresponding remedial purpose, may properly be deemed criminal punishment. *Id.* at 449, 109 S.Ct. at 1902.

On the other hand, where the penalty can be characterized as serving a remedial purpose, a court must determine whether the penalty assessed in a given case accomplishes

its remedial purpose of making the government whole, without crossing the line to criminal punishment, a dollar amount which is difficult, if not impossible, to ascertain. *Id.* at 449, 109 S.Ct. at 1902. Because the "process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice", *id.*, only in the rare case, such as *Halper,* where the imposition of a civil penalty against a small gauge offender is not rationally related to the goal of making the government whole, but serves solely a punitive purpose, will the prohibitions of the Double Jeopardy Clause be implicated. *Id.* at 449–51, 109 S.Ct. at 1902–03.[8]

The *Halper* test is well suited for application to the instant case because § 112(1) of the CCPA allows a penalty of up to $2,000 for each proven violation of the CCPA.[9] Under *Halper,* this court must first determine whether § 112(1) is properly characterized as solely punitive in purpose or as serving both punitive and remedial goals.[10] If the statute serves solely a punitive purpose, the court must find that imposition of § 112(1) penalties against plaintiff in the state court proceeding would violate his Fifth Amendment privilege against self-incrimination.

Plaintiff argues that the instant action is not one in which the Attorney General is attempting to obtain "rough remedial justice" through a state civil enforcement proceeding. Plaintiff maintains that *Helvering, Rex Trailer Co., and United States ex rel. Marcus v. Hess,* the cases relied upon by the *Halper* court, are all distinguishable from the instant case because in those cases the damages sought by the federal government were based on frauds perpetrated upon the government itself, and, because the statutes under which penalties were assessed did not contain separate provisions allowing for the government's recovery of attorney's fees and costs. Here, the defendants seek civil penalties against plaintiff, in addition to restitution to the consumers who were allegedly injured by plaintiff under § 110(1), and in addition to their attorney's fees and costs associated with prosecuting the civil enforcement proceeding under § 113(4). Therefore, plaintiff contends, the civil penalties sought under § 112(1) are prima facie punitive because the CCPA provides separately for "make-whole" compensation to both consumers and the state for their actual damages resulting from a deceptive trade practice. Plaintiff argues that *May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967 (Colo.1993) reinforces his position that the sole or predominant purpose of § 112(1) is to punish persons who violate the CCPA.[11]

8. The *Halper* court remanded the case to the district court to give the government an opportunity to prove that its costs were greater than estimated by the trial court and to attempt to reduce the disparity between the asserted liability of defendant in the amount of $130,000 and the government's demonstrated costs. *Halper,* 490 U.S. at 452, 109 S.Ct. at 1903–04.

9. Conversely, § 112(1) does not lend itself well to application of the case law cited by plaintiff which discusses whether civil contempt sanctions may be properly characterized as criminal contempt sanctions. As noted by the court in *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), civil contempt proceedings are unique in that an individual judge has sole discretion to identify, prosecute and penalize the contumacious conduct. *Id.* at 2559, 512 U.S. at 830–32. Because such proceedings are therefore susceptible to abuse, a judge's labeling of a sanction as civil, versus criminal, is not entitled to the same deference accorded legislative intent under a statutory scheme that provides for the imposition of civil penalties. *Id.* at 2562–63, 512 U.S. at 836–40.

10. Plaintiff argued at hearing that *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901–02, stands for the proposition that "hybrid" civil penalty statutes, which serve both punitive and remedial goals, constitute criminal penalty statutes which implicate Fifth Amendment protections.

Plaintiff misconstrues *Halper* because the Supreme Court specifically held otherwise: "We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution." *Id.* (Emphasis supplied); *see, also, United States v. Ursery,* —— U.S. ——, ——, 116 S.Ct. 2135, 2148, 135 L.Ed.2d 549 (1996)(fact that civil forfeiture statutes have "certain punitive aspects" does not transform civil forfeiture into criminal punishment).

11. *May Dep't Stores Co.* involved a judicial interpretation by the Colorado Supreme Court of the language contained in § 112(1) which states that a violation of the CCPA "shall constitute a separate violation with respect to each consumer or transaction involved." 863 P.2d at 971–72.

Plaintiff misapprehends the operative legal principles which formed the bases of the Supreme Court's decision in *Halper.* The *Halper* court specifically recognized that reasonable liquidated damages clauses and double damage provisions do no more than make the government whole. *Halper,* 490 U.S. at 449, 109 S.Ct. at 1902. Thus, contrary to plaintiff's assertions, the government is not required to prove its damages to the exact dollar. Rather, the government may recover more than its proven damages as long as such damages are rationally related to the civil penalty's remedial purposes. A civil penalty loses its civil nature only when it is "so far divorced from any remedial goal" that it constitutes a criminal sanction. It would be an elevation of form over substance to find that the CCPA's framework, which provides separate sections for the assessment of restitution, civil sanctions, and attorney's fees and costs, is prima facie evidence of a solely punitive purpose behind § 112(1).

The CCPA does not set forth a statement of legislative purpose, nor has the legislative history of the CCPA been memorialized. *See May Dep't Stores Co.,* 863 P.2d at 973, citing David B. Lee, Note, *The Colorado Consumer Protection Act: Panacea or Pandora's Box?,* 70 Denv.U.L.Rev. 141,148 (1992). Defendants do not dispute that one of the goals of § 112(1) is deterrence and retribution. However, defendants contend that the overall purpose of the statute is to provide a mechanism for prompt and economical redress against consumer fraud, thereby remedying injuries to the state's general and financial welfare.[12] Defendants' Motion to Dismiss, at pp. 9–10.

Further, plaintiffs reliance on *May Dep't Stores Co.* is misplaced as it does not support his position that the sole purpose of § 112(1) is a punitive one. Indeed, although the Colorado Supreme Court recognized that § 112(1) serves a punitive purpose, the court also recognized an undefined remedial purpose: "in order to effectuate the broad remedial relief and deterrence purposes, the CCPA does not require proof of actual injury." 863 P.2d at 973.

Importantly, the Colorado Supreme Court in *May Dep't Stores Co.* noted that individual sections of the CCPA should not be interpreted in a vacuum but should rather be construed in conjunction with the overall legislative purpose of the CCPA. *Id.* at 973, n. 10. The court finds persuasive the Colorado Supreme Court's direction that the purposes of any specific section of the CCPA must be interpreted in light of the purposes of the regulatory scheme as a whole.

Other state and federal jurisdictions have adopted the "overall legislative purpose" approach in upholding the "civil" nature of monetary penalty statutes which are part of a comprehensive regulatory scheme. *See, for example, People ex rel. Fahner,* 77 Ill.Dec. at 697, 461 N.E.2d at 84 (civil penalty provision contained in Illinois Consumer Fraud and Deceptive Business Practices Act legitimately imposed as an aid to enforcement of a regulatory and remedial statute designed to protect the public); *Gardner,* 841 F.2d at 1278 (parking violation fines imposed in the context of a comprehensive regulatory scheme are not punitive in nature); *Williams v. Leybold Technologies, Inc.,* 784 F.Supp. 765, 770 (N.D.Cal.1992)(civil penalty provision of Emergency Planning and Community Right–to–Know Act which is designed to accomplish general regulatory goal of compliance with statutory reporting requirements supports legislative intent to characterize penalty as civil in nature).

The Colorado Supreme Court's advisement that individual sections of the CCPA, a comprehensive regulatory statute, should be interpreted in light of the statute's overall remedial and regulatory purposes is persuasive. The court thus finds that § 112(1) aids the CCPA's overall remedial purpose of protecting the state's consumers against deceptive trade practices and is therefore properly characterized as serving primarily a remedial, and also a punitive, purpose.

---

**12.** In *Western Food Plan, Inc. v. District Court,* 198 Colo. 251, 598 P.2d 1038, 1041 (1979), the Colorado Supreme Court determined that the

CCPA's "broad legislative purpose" is "to provide prompt, economical, and readily available remedies against consumer fraud."

## C.

Because the court has found that § 112(1) serves a remedial purpose, the court denies the equitable relief which plaintiff requests at this time. Determination of whether the state court action will result in one of the rare cases in which "a small gauge offender is subjected to penalties which are overwhelmingly disproportionate to the damages he has caused", *Halper*, 490 U.S. at 450, 109 S.Ct. at 1902, depends upon the resolution of the civil enforcement proceeding.[13] It is thus premature for the court to determine whether the ratio between the monetary relief sought by the Colorado Attorney General in the state court action bears a rational relationship to remediation of the government for defendant's alleged violations of the CCPA.

Defendants argue that the court should abstain from deciding the constitutionality of § 112(1), as applied to plaintiff, because the constitutional issues have been raised in the parallel state action and the state proceeding is the more appropriate forum for resolution of the issues.

■ The court need not reach the abstention issue because the court cannot abstain from hearing a claim over which it lacks subject matter jurisdiction: "The doctrine of abstention under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

■ A federal district court lacks subject matter jurisdiction over a case, under Article III of the constitution, if the claim presented to the court is not ripe for review. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir.1995). In determining whether a claim is ripe, a court evaluates "the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415 (10th Cir.1990)(internal quotation omitted).

■ An issue is not fit for judicial review if its resolution "involves uncertain or contingent future events that may not occur as anticipated or may not occur at all." *New Mexicans for Bill Richardson*, 64 F.3d at 1499, quoting 13A Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3052, at 112. Assessment of the hardship to the parties resulting from withholding federal judi-

---

**13.** Courts applying the *Halper* test have been careful to heed the Supreme Court's cautionary words that the holding announced in that case is applicable only in the rare case, such as the one before the court, "where a fixed penalty provision subjects a prolific but small gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* at 449, 109 S.Ct. at 1902.

In *United States v. Barnette*, 10 F.3d 1553 (11th Cir.1994), the government sought between $18.6 million and $50.5 million in damages from defendant (which amount included approximately $15.8 million in direct loss damages as a result of defendant's fraud, treble damages and statutory penalties) under the False Claims Act, plus its costs incurred in prosecuting the civil action. *Id.* at 1558. The question before the court was whether, assuming the government had suffered approximately $15.8 million in direct loss damages, a total recovery of $50.5 million in damages and penalties, on top of the prior criminal prosecution, would violate the Double Jeopardy Clause. *Id.* at 1558.

The *Barnette* court looked at the facts in *Halper* and noted that the ratio between the total recovery sought by the government and the amount of the government's actual loss (including investigation and prosecution costs), was 8:1. The *Barnette* court then found that no matter what the government's claimed costs were for investigating and prosecuting the action before it, the applicable *Halper* ratio would not exceed 3.2:1. Because the ratio was not close to the objectionable ratio in *Halper*, the court found that the government's claimed damages and penalties bore a rational relationship to the government's loss. *Id.* at 1559–60. *See, also, United States v. Boutte*, 907 F.Supp. 239 (E.D.Tex.1995)(3;38 ratio bears a rational relation to remediation of government for defendant's violations of False Claims Act); *United States v. Peters*, 927 F.Supp. 363 (D.Neb.1996)(approximate 2:1 ratio bears a rational relation to remediation of the government for defendant's violations of False Claims Act).

cial consideration usually depends upon whether the challenged action creates a "direct and immediate" dilemma for the parties. *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (internal quotations omitted).

Here, the question of whether § 112(1), as applied to plaintiff. is unconstitutional, is not fit for federal judicial review at this time. Resolution of the issue depends entirely upon the state court adjudication which may be resolved in plaintiff's favor, thereby mooting any constitutional issues, or which will, at the very least, establish the monetary figures which are essential to the *Halper* analysis. Further, the Attorney General's request for § 112(1) penalties against plaintiff in the civil enforcement action does not create a "direct and immediate" dilemma for the parties given the court's determination that the act of seeking § 112(1) penalties, in and of itself, does not violate plaintiffs Fifth Amendment privilege against self-incrimination.

The court therefore finds that because plaintiffs claim is not yet ripe for adjudication, the court lacks subject matter jurisdiction to decide whether § 112(1) of the CCPA, as applied to plaintiff, is unconstitutional.

### D.

Plaintiff also contends that the penalties imposed by § 112(1) are quasi-criminal in nature and are therefore sufficient to trigger plaintiffs Fifth Amendment's privilege against compelled self-incrimination.

Characterization of a proceeding as "quasi-criminal" in nature originated with the Supreme Court's decision in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). In *Boyd*, the government prosecuted plaintiff for a criminal violation under a federal customs statute which provided for the imposition of fines, imprisonment, and forfeiture of any good for which customs duties had not been paid. In a later forfeiture proceeding, the court upheld plaintiffs invocation of his Fifth Amendment privilege against self-incrimination. The court held that proceedings instituted against an individual for forfeiture of property pursuant to criminal offenses committed by that individu-

al, though civil in form, were criminal in nature, and therefore implicated the Self-Incrimination Clause of the Fifth Amendment. *Id.* at 634–35.

The Supreme Court later clarified its holding in *Boyd* in *Hepner v. United States*, 213 U.S. 103, 112, 29 S.Ct. 474, 478, 53 L.Ed. 720 (1909), wherein the court explained that *Boyd* did not abrogate the general rule that penalties may be recovered in a civil action so long as the action is not so far criminal in nature as to implicate the penalized individual's Fifth Amendment protection against self-incrimination. The *Hepner* court's clarification of *Boyd* was adopted by the *Ward* court as the operative inquiry in determining whether an action is "quasi-criminal": whether the penalty imposed, although not "criminal" enough in nature to trigger other Constitutional guarantees normally associated with criminal prosecutions, is "nevertheless 'so far criminal in [its] nature' as to trigger the Self-Incrimination Clause of the Fifth Amendment." *Ward*, 448 U.S. at 253–254, 100 S.Ct. at 2644, quoting *Hepner*, 213 U.S. at 112, 29 S.Ct. at 478. The *Ward* court concluded that in light of its finding that Congress intended to create a civil penalty for violations of § 311(b)(6) of the FWPCA, and given the lack of any clear evidence to the contrary, it would lead to an anomalous result to hold that the FWPCA created a criminal penalty for purposes of the Fifth Amendment Self-Incrimination Clause, but a civil penalty for all other purposes. *Id.* at 254, 100 S.Ct. at 2644; *see, also, Roach*, 804 F.2d at 1155.

Here, the court declines to find, at this time, that any amount of penalty imposed upon plaintiff in the civil enforcement proceeding under § 112(1) of the CCPA would be "so far criminal in nature" as to preclude defendants from seeking those penalties by use of plaintiffs prior compelled testimony.

### IV.

The court recommends that Plaintiffs Cross Motion for Summary Judgment be denied. The court further recommends that Defendants' Motion to Dismiss be granted in part and denied in part.

Plaintiff's § 1983 claim for declaratory or injunctive relief to prevent the defendants from using his prior compelled testimony to seek § 112(1) penalties against him in the civil enforcement proceeding is not ripe for adjudication at this time. Because the court cannot determine whether the statute, as applied to plaintiff, will violate his Fifth Amendment privilege against self-incrimination prior to resolution of the action pending in Adams County District Court, Case No. 96–CV–2326, *State ex rel Norton v. Duncan,* the court recommends that the instant action be dismissed, without prejudice.

March 31, 1997.